## PACIFIC COAST STEEL CO. v. McLAUGH-LIN, Collector of Internal Revenue.
### No. 6595.

Circuit Court of Appeals, Ninth Circuit.

Aug. 22, 1932.

Claude I. Parker, Ralph W. Smith, and George H. Koster, all of Los Angeles, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

A corporate taxpayer, Pacific Coast Steel Company, brought this action at law in the District Court for the Northern District of California for the recovery of income and excess profit taxes for the calendar year of 1917, claiming that said taxes were illegally assessed and collected as deficiency taxes. Pursuant to stipulation, the case was tried by the court, sitting without a jury, and, upon special findings, a judgment was entered for the defendant. The taxpayer has prosecuted this appeal from the judgment, and the sole issue is whether or not collections of taxes on June 30, 1927, and August 27, 1928, respectively, were made after the applicable periods of limitation had barred the right of the collector to make them.

The pertinent facts found by the court below are as follows:

On March 30, 1918, plaintiff filed its income and profits tax return for the calendar year 1917.

On June 24, 1920, the Commissioner of Internal Revenue forwarded to plaintiff a tentative determination of tax deficiency wherein plaintiff was notified that the Commissioner asserted a claim of $209,876.47 for deficiency taxes because of an understatement

by plaintiff in the return of March 30, 1918.

On December 9, 1922, the Commissioner determined that the correct amount of deficiency tax that was due from the plaintiff for said calendar year 1917 was $257,443.30.

On December 16, 1922, plaintiff and the acting Commissioner of Internal Revenue entered into a written agreement whereby the plaintiff consented to a determination, assessment, and collection of income, excess profits, or war profit taxes due under any return made by or on behalf of it for the years 1911 to 1917, inclusive, under the Revenue Act of 1921 (42 Stat. 227) or under prior tax acts irrespective of any period of limitations.

On February 9, 1923, the deficiency tax of $257,443.30 was assessed against plaintiff for the calendar year 1917, and on April 1, 1923, notice and demand for the payment of such deficiency tax was made upon plaintiff, but no proceeding to collect a deficiency tax for 1917 was instituted prior to December 7, 1925, when by a written instrument executed by plaintiff and the Commissioner the plaintiff waived until December 31, 1926, the time prescribed by law for making any assessment of the amount of income, excess profits, or war profits taxes due under any return made by or on behalf of it for the years 1917 to 1920, inclusive, under existing or prior Revenue Acts, and again on November 29, 1926, by a similar writing, the plaintiff extended the period of waiver of time for making any assessment of said taxes under any return made by or on behalf of it for the year 1917 under existing or prior Revenue Acts until December 31, 1927.

A second notice and demand was made upon plaintiff on or about July 16, 1927, wherein defendant collector claimed a deficiency tax due from plaintiff in the sum of $129,920.06, upon its tax liability for 1917. In this notice and demand, plaintiff was informed that overpayments by it of taxes in 1918 and 1919, including the amount of $111,953.71, had been on June 30, 1927, credited upon the deficiency tax of 1917.

On August 27, 1928, plaintiff under written protest and to avoid seizure and sale of its property paid to the defendant collector $103,111.16, as deficiency taxes due and interest in the further sum of $26,808.90, the entire amount of $129,920.06 to apply against the determined deficiency taxes due from the plaintiff for the calendar year 1917. On October 23, 1928, plaintiff filed with the defendant collector for transmittal to the Commissioner of Internal Revenue a demand and claim of refund for taxes so paid as income and excess profits taxes and interest thereon in the aggregate sum of $284,252.20 upon the ground that the assessment and the collection of such taxes was illegal and barred by the statutes of limitations. The Commissioner on December 14, 1928, rejected entirely said claim for refund, refused to return any part of said sum of money, and plaintiff thereupon brought this action.

When plaintiff filed its income tax return on March 30, 1918, the time within which the amounts of any tax due thereunder could be assessed or collected was controlled by section 250 (d) of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1083, which, as far as applicable to this appeal, reads: "Sec. 250. * * * (d) Except in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made, and no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date when the return was due or was made. * * *"

When the assessment of February 9, 1923, involved in this appeal, was made and applicable to it, there was in effect the Revenue Act of 1921, 42 Stat. 227, 265. Section 250 (d) thereof, as far as it is applicable here, reads: "The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts * * * shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts * * * shall be begun, after the expiration of five years after the date when such return was filed, but this shall not affect suits or proceedings begun at the time of the passage of this Act. * * *"

It is conceded by appellant that the assessment of the additional tax of $257,443.30, having been made February 9, 1923, was timely, and no question is raised by the tax-

payer on the claims for refund or in the pleadings in the court below, and none is urged here, against the regularity or validity of this assessment.

Moreover, notwithstanding the waiver was according to its terms unlimited in time, it is indisputable that under the decisions of the Supreme Court in Aiken v. Burnet, 282 U. S. 279, 51 S. Ct. 148, 75 L. Ed. 339, and Stange v. U. S., 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335, and pursuant to regulations of the Commissioner of Internal Revenue promulgated April 11, 1923, Mim. 3085, I. R. Cum. Bull. II-1, p. 174, the voluntary waiver dated December 16, 1922, extended the time for both assessment and collection of the 1917 taxes only to April 1, 1924. This was because a departmental ruling terminated all such waivers April 1, 1924.

The appellant contends, however, that the court below erred in holding that the second waiver—the one executed on December 7, 1925—operated retroactively to extend the time in which the collection of taxes assessed on February 9, 1923, could be made. In other words, the argument is that, because the waiver of December 16, 1922, expired April 1, 1924, all right to subsequently collect the taxes that were validly assessed on February 9, 1923, ceased when the Revenue Act of 1924 became law by reason of the terms of that act and specifically because of subdivision (c), (d) and (e) of section 278 thereof (26 USCA §§ 1060 note, 1061 note, 1062 note).

The 1924 act, 43 Stat. 253, became effective on June 2, 1924. Section 277 (a) thereof (26 USCA § 1057 note), as far as material to this appeal, states: "Except as provided in section 278 and in subdivision (b) of section 274 and in subdivision (b) of section 279 [274 and 279 are not involved in this appeal] * * * (2) The amount of income, excess-profits, and war-profits taxes imposed by * * * the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period."

Section 278 (c), (d), and (e), respectively, of the act provide:

"(c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.

"(d) Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

"(e) This section shall not (1) authorize the assessment of a tax or the collection thereof by distraint or by a proceeding in court if at the time of the enactment of this Act such assessment, distraint, or proceeding was barred by the period of limitation then in existence, or (2) affect any assessment made, or distraint or proceeding in court begun, before the enactment of this Act."

The appellant's position concretely stated is that subdivision (e) of section 278 limits and qualifies subdivision (c) of the same section so as to prevent taxpayers from effectively waiving the benefit of the statute of limitation in all cases where the right of the government to collect taxes was barred on the date of the enactment of the Revenue Act of 1924, to wit, June 2, 1924.

We find no language in subdivision (e) of section 278 or in any other part of the act of 1924 that expressly forbids taxpayers from, pursuant to the comprehensive wording of subdivision (c), voluntarily waiving the bar against the collection of validly assessed and unpaid taxes, the collection of which was barred on June 2, 1924. Subdivision (e) merely declares that section 278 of the 1924 act shall not authorize the assessment or the collection of such taxes. There being no clear prohibition against taxpayer's voluntary waiver or limitation for collecting taxes that have been timely assessed, it would be straining and amplifying the terms of (e) and unnecessarily restricting the broad and inclusive language of (c) to construe section 278 as appellant contends. We should not adopt a construction that would require giving to the statute a meaning not expressed by the language used.

Statutes of limitation barring the collection of taxes that are justly due and unpaid must receive a strict construction in favor of the government, and limitation in such cases will not be presumed, in the absence of clear Congressional action. Loewer Realty Co. v. Anderson (C. C. A. 2) 31 F.(2d) 268.

Moreover, the Supreme Court has held that the right of waiver of statutes of limita-

tion by taxpayers does not necessarily depend upon statutory authorization. See Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; Aiken v. Burnet, 282 U. S. 280, 51 S. Ct. 148, 149, 75 L. Ed. 339; Florsheim Bros., etc., v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542. There is inherent in the taxpayer what may be termed a common-law right to waive the benefit of the bar of limitation.

As illustrative of the broad effect that should be given to voluntary waivers of limitation against collections of taxes, the Supreme Court has pointedly said in Aiken v. Burnet, supra: "It is contended that the waiver of February 5, 1921, is invalid because it was executed prior to the enactment of section 250 (d) of the Revenue Act of 1921, which was the first of the Revenue Acts to provide in terms for the giving of waivers. The argument is that prior to the enactment of that section the Commissioner lacked authority to accept waivers of the limitation on the period within which assessment might be made under the acts of 1916 and 1917. This contention is not sound. The limitation periods on assessment could be waived by the taxpayer in the same fashion as other statutes of limitations are waived. No reason appears why the Commissioner could not accept such a waiver prior to the act of 1921. Although the government might at that time still have brought suit even though the period for assessment had expired, it was thought desirable to follow the normal and simpler course of assessment and collection by distraint proceedings because of the advantages afforded. The Commissioner requested the taxpayer to execute a waiver in cases where prolonged re-examination of the return seemed necessary. If authority was needed for the acceptance of such waivers, it may be found in the general broad administrative provisions of the respective acts. Even after the act of 1921, a so-called waiver was not a contract. The requirement in section 250 (d) of that act that the Commissioner sign the consent was inserted to meet exigencies of administration, and not as a grant of authority to contract for waivers."

The obligation of the appellant to pay the 1917 taxes had been actually fixed and determined by a valid assessment made prior to June 2, 1924, the day the Revenue Act of 1924 went into effect, and therefore the waivers under consideration in this appeal are distinguishable from those involved in Uncasville Mfg. Co. v. Commissioner (C. C. A. 2) 55 F.(2d) 893. In the latter case all of the deficiency taxes were assessed for the years in question subsequent to June 2, 1924. Upon that date the time had already expired for assessment for deficiencies for the years involved. Waivers were then given authorizing the Commissioner to assess deficiencies, and, acting on such waivers, he assessed them. The Circuit Court of Appeals for the Second Circuit in that case construed 278 (e) of the 1924 Revenue Act as confining 278 (c) of the same act to instances where assessment was not barred on June 2, 1924. In the Uncasville action it thus appears that the obligation to pay, as well as the right of the government to enforce payment of the deficiency taxes, did not exist on June 2, 1924, while here the tax debt and obligation were fully established and existent at all times since February 9, 1923. All that was accomplished by the waiver of December 7, 1925, was to revive the remedy of collection for a fixed and just debt that was due and undischarged on that date. There was no attempt by the waiver under consideration here to thereby create an indebtedness that did not exist and had not been established at the time of the waiver.

There are many strong intimations in the opinion of Mr. Justice Brandeis in Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 139, 75 L. Ed. 349, that sustain our conclusion that the waiver of December 7, 1925, is valid and effective under section 278 of the Revenue Act of 1924. In footnote 5 on page 300 of the official report (51 S. Ct. 137, 139) of the Supreme Court decision in the Burnet Case, relative to a statement in the opinion: "We need not determine whether respondent is correct in assuming that section 278 (e) qualifies section 278 (c) in respect to waivers on assessment of taxes barred prior to June 2, 1924," the following explanation appears: "Subdivision (e) cannot be said to qualify every other subdivision in section 278. Nothing indicates an intention to have it limit the effect of section 278 (a), 26 USCA § 1058, which permits assessment to be made or suit to be brought at any time in the case of a false or fraudulent return or a failure to file any return. * * * Nor is there any indication that it should qualify subsection (c) which provides for the giving of waivers. * * * The decision in Russell v. U. S., 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255, involved the interpretation of subdivision (d) which extended the period for collection without any act on the part of the taxpayer. Subdivision (c) is effective only if the taxpayer voluntarily executed a waiver."

The validity and effect of waivers given by taxpayers subsequent to June 2, 1924, and after the expiration of the period of assessment of deficiency taxes were considered by this court in California Iron Yards Co. v. Commissioner of Internal Revenue, 47 F.(2d) 514, and Judge Wilbur in the course of the opinion in that case said: "The petitioner seeks to review the action of the Board of Tax Appeals in affirming an order of the Commissioner of Internal Revenue fixing a deficiency tax of the petitioner for the years 1918, 1919, and 1920. The principal question in the case involves the validity and effect of a waiver of January 16, 1925. This waiver was signed more than five years after the return made by the petitioner for the year 1919, and it is contended by the petitioner that, inasmuch as this waiver was executed more than five years after return, and therefore after the limitation for assessment of the tax for the year 1919, it did not authorize the assessment which was made by the Commissioner on December 16, 1925. As the courts were divided upon that question (see note 1, p. 146 opinion of Supreme Court in Stange v. United States, 51 S. Ct. 145 [282 U. S. 270], 75 L. Ed. 335, affirming 68 Ct. Cl. 395, decided November 4, 1929), and, as the matter was then pending before the Supreme Court in that case on certiorari from the Court of Claims, it was suggested that a decision herein be postponed until the decision by the Supreme Court in that case. This decision was rendered January 5, 1931. It is there held in accordance with the contention of the Commissioner in this case that the waiver was effective notwithstanding that it was executed after the running of the statute of limitations. It follows that a properly executed waiver was effective notwithstanding the expiration of the period for making the assessment before the execution of the waiver."

A fortiori, should a properly executed waiver of the bar against collection of a tax that had been timely assessed be held effective and binding.

In Hart Glass Mfg. Co. v. U. S., 48 F.(2d) 435, 443, the Court of Claims, in considering the scope of waivers under 278 (c) of Revenue Acts of 1924 and 1926, said: "By virtue of section 278 (c) of the Revenue Acts of 1924 and 1926 * * * the waiver herein, although filed after the limitations had run against the assessment of taxes against the plaintiff for the year 1918, revived in the Commissioner authority to make an assessment within the period covered by the waiver."

See, also, the recent decision of the Court of Claims in McDonnell v. U. S., 59 F.(2d) 290, reported in Prentice-Hall Federal Tax Service on June 16, 1932, 1656, under paragraph 1308, sustaining the validity of voluntary waivers of taxpayers of the benefit of the statute of limitations where such waivers were given after the enactment of the Revenue Act of 1924 in cases where the statutory limitation had expired prior to the effective date of said act, and to the same effect see decisions of the Court of Appeals of the District of Columbia in Pottash Bros. v. Burnet, 60 App. D. C. 167, 50 F.(2d) 317, and Consumers' Ice Co. v. Burnet, 60 App. D. C. 191, 50 F.(2d) 342.

We are of the opinion that the waiver voluntarily executed by the appellant taxpayer on December 7, 1925, was effective, and that it operated to revive the right of the government to collect the taxes that had been lawfully assessed on February 9, 1923, although, at the time this waiver was given, and prior to the date the Revenue Act of 1924 became effective, the statute of limitations had run against the remedy of collection. We think this conclusion is in consonance with the decision of the Supreme Court. See Burnet v. Chicago Railway Equipment Co., 282 U. S. 298, 51 S. Ct. 137, 75 L. Ed. 349; Stange v. U. S., 282 U. S. 274, 51 S. Ct. 145, 75 L. Ed. 335; Brown & Sons Lumber Co. v. Burnet, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. 343; Aiken v. U. S., 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339.

The appellant concedes that, if the waiver of December 7, 1925, is effective, the collection made by the appellee on June 30, 1927, is valid, and does not constitute an overpayment which appellant can recover because the waiver of December 7, by its terms, ran to December 31, 1926, and the third waiver, that of November 29, 1926, extended the time for collection beyond June 30, 1927, to wit, to December 31, 1927. Our conclusion that the waiver of December 7, 1925, is valid and appellants' concession relative thereto disposes of any necessity of considering section 1106 (a) of the Revenue Act of 1926 (26 USCA § 1249 note) that provided that the bar of the statute of limitations against the United States in respect of any internal revenue tax shall not only operate to bar remedy, but shall extinguish the liability as well. It should be noted, however, that this section was by the Revenue Act of 1928 repealed as of February 26, 1926. Section 612, c. 852, 45 Stat. 875.

It is finally contended, however, assuming that the waiver of December 7, 1925, is valid for all purposes, that the collection made on August 28, 1928, was unauthorized and illegal. The argument in support of this contention is that, because the third and last waiver had by its own terms expired before this collection was made, all right to collect was terminated on the expiration date of the waiver, notwithstanding the Revenue Act of 1926, which extended the period for collection to six years after the date of assessment became effective before the expiration date specified in the waiver. We think this position untenable.

Prior to December 31, 1927 (the expiry date of the last waiver), the Revenue Act of 1926, c. 27, 44 Stat. 9, became law. This law became an inextricable part of the waiver. Its terms and provisions must be read into and with the waiver. Section 277 (a) (3) thereof, 26 USCA, § 1057 (a) (3), as far as applicable to this appeal, reads: "(3) The amount of income, excess-profits, and war-profits taxes imposed by * * * the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

Section 278 (c), (d), and (e), respectively, of said act (26 USCA §§ 1060 note, 1061 and note, and 1062) provide:

"(c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.

"(d) Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer.

"(e) This section shall not bar a distraint or proceeding in court begun before the enactment of the Revenue Act of 1924; nor shall it authorize the assessment of a tax or the collection thereof by distraint or by proceeding in court (1) if at the time of the enactment of this Act such assessment, distraint or proceeding was barred by the statutory period of limitation properly applicable thereto, unless prior to the enactment of this Act the Commissioner and the taxpayer agreed in writing thereto, or (2) contrary to the provisions of subdivision (a) of section 274 of this Act."

Section 274 (a), 26 USCA § 1048, is the section which provides that the Commissioner must give notice to the taxpayer of a deficiency in the tax, and within sixty days from such notice the taxpayer may petition the Board of Tax Appeals for a redetermination of the deficiency. This section has no application to this appeal.

When sections 277 (a) (3) and 278 (c), (d), and (e) of this act are considered together and in relation to one another, and then applied to the facts as found by the court below, it is clear that the collection of August 28, 1928, was valid and legally authorized.

The assessment of February 9, 1923, was validly made within five years after the return was filed on March 30, 1928, as required by section 277 (a) (3), and, as the three voluntary waivers effectively operated to extend the time for collection of the taxes so assessed to December 31, 1927, it is obvious from the plain and explicit terms of sections 278 (c), (d), and (e) that were in effect during the period that was specified in the last waiver that the appellee was given the right to enforce this tax liability by collection at any time within six years after the date of the assessment or until February 9, 1929. Subdivision (d) expressly refers to an assessment timely imposed by this title or "by prior Act of Congress * * * (whether before or after the enactment of this Act)." And it clearly authorizes collection of taxes made under such an assessment at any time within six years from the assessment.

The terms and provisions of the 1926 Revenue Act respecting the period of limitation upon assessment and collection of taxes are different from those of the Revenue Act of 1924. While section 278 (d) of both acts provide a six-year period after the date of assessment for collection of the tax, the 1924 act in section 278 (e) thereof (26 USCA § 1062 note) provides that section 278 shall not affect any assessment made before the enacting of the 1924 statute. No such condition is found in the Revenue Act of 1926. To the contrary, this latter statute in 278 (d) thereof (26 USCA § 1061 and note) expressly made

the six-year period for collection applicable to assessments "before or after the enactment" of the act. It is clear, therefore, that Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255, which held that the six-year period for collection provided for in the 1924 act did not apply where the assessment was made prior to June 2, 1924 (the effective date of the Revenue Act of 1924), because to make the six-year period applicable to such assessments would "affect" them contrary to the express terms of (e) of section 278 of the 1924 act, is not in point.

This court had before it in Toy v. United States, 45 F.(2d) 1, an analogous situation to the one now under discussion, except that the part of the Revenue Act of 1926 that was considered in the Toy Case was section 311 (26 USCA § 1111), relating to estate taxes, instead of section 278, dealing with income and profits taxes, but the limitation and waiver features of both sections are identical. In the Toy Case the estate tax return was filed August 16, 1922, and a suit for collection of this tax was brought November 14, 1927. It was held that the six-year period for collection provided by the Revenue Act of 1926 applied. Appellant seeks to distinguish this case from the one at bar because in the Toy Case the five years for the assessment and collection of the tax did not expire until after the enactment of the 1926 Revenue Act, and therefore that act could extend the limitation period by imposing the six-year period for collection, but we think that the operation of the waivers, under section 278, whereby the right of collection was extended to a date after the enactment of the 1926 act, as well as the terms of the 1926 Revenue Act itself, makes the principle of the Toy Case applicable here.

We have in an earlier part of this opinion mentioned that it has been settled by the Supreme Court in Florsheim Bros. Co. v. U. S., 280 U. S. 466, 50 S. Ct. 215, 219, 74 L. Ed. 542, and in Aiken v. Burnet, supra, that the taxpayers' waivers of the statute of limitation in assessment and collection of taxes are not contracts that limit the power of the government from enforcing by legislation the payment of taxes beyond the time specified in waivers, and, although the appellant couched the terms of the last waiver in a manner specifically providing that "this waiver of the time for making any assessment '(collection)' as aforesaid shall remain in effect until December 31, 1927, and shall then expire," it cannot thereby disable the government from prolonging the period for collection by statute enacted while the waiver was in force. The 1926 Revenue Act gave a six-year period for the collection of all assessments, timely assessed and existing at the time the act went into effect, without excepting those where waivers had been given.

In the Florsheim Case, supra, the Supreme Court said:

"The Government contends that the 'Income and Profits Tax Waivers' executed by the corporations were waivers by them of the statutory period for another year; that while these waivers were still in force and while the corporations' liability was thus still alive, the Revenue Acts of 1924 and 1926 were passed, increasing the period for collection to six years after assessment; that these acts are applicable to the cases at bar; and that, since the collections were made within six years after the assessments, they were timely made. The corporations insist that the 'Waivers' were not merely waivers extending the statutory period, but were binding contracts which limited the time in which the Commissioner could assess and collect the taxes; and that no change in the law made after the date of the contracts and enlarging the time for collection can affect their rights. They urge that the 1924 and 1926 acts did not purport to extend the periods thus limited by contract; and that, if construed as extending such periods, the provisions of these acts are unconstitutional. They conceded that, in the absence of contract, a Legislature may constitutionally lengthen or shorten the period in which a right may be enforced by legal proceedings.

"We are of opinion that the contention of the Government must prevail."

The District Court was correct in holding that none of the collections in this case were barred by the statutes of limitation. The judgment is affirmed.