## W. H. HILL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6191.

Circuit Court of Appeals, Sixth Circuit.

April 10, 1933.

Robert P. Smith, of Washington, D. C. (William Rolston Brown, of Detroit, Mich., and Arthur H. Deibert and William Ristig, both of Washington, D. C., on the brief), for petitioner.

William Cutler Thompson, of Washington, D. C. (G. A. Youngquist, Sewall Key, Norman D. Keller, C. M. Charest, and John D. Foley, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

During the years 1917, 1918, and 1919, the W. H. Hill Company kept its books upon a fiscal year basis, but for each of these years it filed its returns for income and excess profits taxes upon a calendar year basis. For the year 1920, the return was filed for the fiscal year beginning April 1, 1920, and ending March 31, 1921, so that there was a period of three months (January 1, 1920, to March 31, 1920) for which no return was filed. While the return for 1920 was being prepared an audit was made on behalf of the Commissioner of Internal Revenue, and the attention of the company was called both to the fact that no return covered the interim period above mentioned and to the fact that the prior returns should have been made on the fiscal year basis. Returns were accordingly prepared, inter alia, for the fiscal years ending March 31, 1919, and March 31, 1920, which returns were delivered to the internal revenue agent making the audit, and by him were delivered to the internal revenue agent in charge, at Detroit, under date of July 16, 1921. This procedure was adopted at the suggestion of the examining agent who said he "would attend to the filing."

No official action seems to have been taken upon these new returns until January 25, 1924, when a jeopardy assessment was made for the fiscal year ending March 31, 1919. In his notice of this assessment the commissioner said that in view of the fact that a request for relief under the provisions of section 210, Revenue Act of 1917 (40 Stat. 307), or sections 327, 328, Revenue Act of 1918 (40 Stat. 1093), had been made, and the further fact "that any overassessments found due by reason of the application of the above provisions may be jeopardized by the tolling [running] of the statute of limitations unless a formal claim is filed, it is deemed expedient by this office that the above tax be assessed immediately * * * and that a claim be filed by you to protect your interests in the matter." Thereupon a claim for abatement was filed for the net amount of the deficiency assessment, the amounts theretofore paid on the calendar year basis having been deducted, but no action was taken upon the return for the year ending March 31, 1920, except that, seemingly, an application for special assessment under sections 327, 328 of the Revenue Act of 1918 was also filed for the latter year.

On January 11, 1926, this request for special assessment was denied and the petitioner protested against such denial under date of February 6, 1926. Again delay ensued, no action being taken until August 25, 1926, when the commissioner reversed his former ruling, allowed the request, and, upon the data contained in the several returns and the report of the audit, found an overassessment of $27,867.60 for the year ending March 31, 1919, and a deficiency of $63,679.57 for the year ending March 31, 1920. The claim for abatement already pending was therefore allowed for the amount of the overassessment, and denied as to the balance, leaving $3,392.87 still due under the assessment of January 25, 1924, which amount is not here involved.

Petitioner appealed to the Board of Tax Appeals as to the assessment for the year ending March 31, 1920, claiming that the return for that year was filed, within the intent of the act, on July 16, 1921, when it was delivered to the representative of the commissioner conducting the audit, and by him delivered to the internal revenue agent in charge, and that the statute of limitations had thus run against any deficiency assessment or the collection of any further tax. It is conceded by the government that the statute had run if the returns are to be regarded as "filed" on the date above mentioned; and it is conceded by the petitioner that its contention is without merit unless the delivery of the returns to the revenue agents was sufficient compliance with the act to start the running of the statute. This is the principal question involved. The Board of Tax Appeals held against petitioner and the present petition to review followed.

It may be conceded for the purposes of this case that the returns of July, 1921, were promptly forwarded to the commissioner, and even that the commissioner had the power to assess the tax where the taxpayer had filed no return. Rev. Stat. § 3176 (26 USCA § 97); Revenue Act 1918, § 250 (c), 40 Stat. 1083. But there seems to us to be a radical difference between lodging a paper, designated a return, with the commissioner, and filing the same paper with the collector. In the first case no tax is assessed and no payment is required until the commissioner shall have acted on the record before him. In the other, the amount of the tax is immediately entered upon the appropriate list and collection is made in due course unless a claim for abatement is filed which will suspend the running of the statute. Here the law required that returns be filed *with the collector*. This was obviously for the purpose of facilitating the prompt and orderly assessment and collection of taxes. At best the inter-

508

nal revenue agent was but the agent of the taxpayer for the purpose of filing the returns, and the situation is no different than it would have been had the taxpayer itself delivered the returns to the commissioner.

In Lucas v. Pilliod Lumber Co., 281 U. S. 245, 50 S. Ct. 297, 74 L. Ed. 829, 67 A. L. R. 1350, it was held that the delivery of an unverified return to the collector did not start the running of the statute of limitations, that "no officer had power to substitute something else for the thing specified," and that "meticulous compliance by the taxpayer with all named conditions" was necessary to secure the benefit of the limitation. Compare, also, Florsheim Bros. Drygoods Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542. If the filing of a return to which the verification was inadvertently omitted, but upon which the tax was in fact assessed, is insufficient to start the running of the statute, we cannot conclude that lodging a return with the commissioner, upon which return no tax was then assessed, was that meticulous compliance with the act which was necessary to start the running of such statute.

The present case is not one merely of an inaccurate or erroneous return. Cf. United States v. Mabel Elevator Co., 17 F.(2d) 109 (D. C. Minn.). Nor is it a case, strictly speaking, of a deficiency assessment upon audit of returns properly filed. Until the return for the fiscal year ending March 31, 1920, was duly filed there was not only no return covering that fiscal year, but no return whatever for the three months interim between January 1 and March 31, 1920. In Paso Robles Mercantile Co. v. Commissioner, 33 F.(2d) 653 (C. C. A. 9), there may be an intimation that where the taxpayer's books are kept on a fiscal year basis, but returns are made upon the calendar year basis, the statute will begin to run whenever returns have been filed which actually cover the entire fiscal period, for it then becomes the duty of the commissioner to make the readjustments; but even this principle, if it be sound, does not help the petitioner in the present case. As we have said, it is conceded by the petitioner that the statute has not run unless the returns which were delivered to the internal revenue agent are to be regarded as "filed"; and we cannot so regard them.

■ It is also contended by the petitioner that in view of the fact that nine months of the calendar year of 1919 are included in the fiscal year ending March 31, 1920, the taxes paid in 1920 for the calendar year 1919 should be applied, and, as we understand the contention, could be applied, only to the payment of taxes found due for the fiscal year ending March 31, 1920. The contention is without merit. The petitioner has received credit upon the tax assessed for the fiscal year ending March 31, 1919, for all payments made during the calendar years 1919 and 1920, and cannot complain. This is consistent with the procedure recognized in American Hide & Leather Co. v. United States, 284 U. S. 343, 52 S. Ct. 154, 76 L. Ed. 331.

■ Lastly, it is urged that the Board of Tax Appeals erred in refusing to allow to petitioner an increase of at least $500,000 in invested capital for the year ending March 31, 1920. During the early years of its corporate life (1895 to 1913) the petitioner had spent approximately $750,000 in house-to-house sample advertising, these expenditures being charged to expense. In 1914 this method of advertising was discontinued and publicity was secured through newspaper and magazine advertising. In 1913 the company received an offer from responsible purchasers of $500,000 for the trade-name "Hill's Cascara Bromide Quinine" and the good will established by the sample advertising. It is therefore contended that this offer definitely establishes the value of such good will and that petitioner should be permitted to set up an earned surplus of at least that amount.

It is apparent that the only theory upon which this item might be included in invested capital is that it was definitely paid for out of earnings, that is, that it forms a part of the earned surplus which, after being earned, was invested from time to time in the purchase of good will and the establishment of a valuable trade-name. Where there has been an actual purchase from another of patents, trade-names, good will, or other intangibles, paid for from surplus, of course no question can arise as to the fact of investment or the amount to be included in the invested capital; but where such an asset is built up with the business itself it is almost always impossible to allocate any item of the expense of promotion and of carrying on the business to the purchase of the good will which has been thus gradually established. In order to include such value there must have been, in effect, a purchase [Cf. La Belle Iron Works v. United States, 256 U. S. 377, 388, 41 S. Ct. 528, 65 L. Ed. 998; Landesman-Hirschheimer Co. v. Commissioner, 44 F.(2d) 521, 523 (C. C. A. 6)], or a definite appropriation from earnings already accumulated for the specific purpose; for it is the cost to the corporation which is controlling, and unless the line of demarcation can be drawn between expense of conducting the

business, including normal sales promotion, and the purchase price of an established asset, the value of the intangible property may not be included. The burden was upon the petitioner to clearly establish this [Morris Coal Co. v. Commissioner, 48 F.(2d) 810 (C. C. A. 6)], and a failure to do so is fatal. Richmond Hosiery Mills v. Commissioner, 29 F.(2d) 262 (C. C. A. 5); Three-in-One Oil Co. v. United States, 35 F.(2d) 987 (Ct. Cl.). Compare, Concrete Engineering Co. v. Commissioner, 58 F.(2d) 566 (C. C. A. 8).

In the present case we are of the opinion that no distinction can be drawn between house-to-house sample advertising and any other type of advertising. It is not shown that the value of the good will arose from the advertising alone, or that such advertising was more intensive or more costly than was normal and necessary for the continuance of the business. The value of the good will may have been in substantial part due to the inherent merit of the product, and the advertising but a normal expense of placing it before the public.

Upon the authorities cited and for the reasons above stated the decision of the Board of Tax Appeals must be affirmed.