HOTEL EQUITIES CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7538-73.   Filed December 15, 1975.

*Burton W. Kanter, Donald A. Statland,* and *Alan F. Segal,* for the petitioner.

*Seymour I. Sherman,* for the respondent.

### OPINION

SCOTT, *Judge:* Petitioner Hotel Equities Corp., on February 10, 1975, filed a motion for summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure. The issue presented for decision is whether a tax return, which is timely

mailed within the provisions of section 7502, I.R.C. 1954,[1] with the other requirements of that section being met, is to be considered filed as of the postmark date for the purposes of determining when the statute of limitations for assertion of a deficiency expires.

The facts, which are undisputed for the purpose of the determination of the issue raised by the summary judgment, show that petitioner's tax return for its taxable year ended January 31, 1970, which otherwise would have been due on April 15 of that year, was due on July 15, 1970, pursuant to a properly secured extension of time.[2] On July 14, 1970, an officer of petitioner mailed from Burlingame, Calif., in a postage prepaid envelope, properly addressed to the Internal Revenue Service Center in Ogden, Utah, the United States corporate income tax return of petitioner for the year ending January 31, 1970. The respondent did not keep the envelope in which the return was mailed.[3]

Petitioner's return for its fiscal year 1970 had affixed thereto a stamp reading "Received, Western Service Center, Jul. 17, 1970, No. 57, Internal Revenue Service, Ogden, Utah." On July 17, 1973, respondent mailed to petitioner a statutory notice determining a deficiency for petitioner's taxable year 1970. Petitioner timely filed with this Court a petition seeking review of that determination. The petition alleged that assessment and collection of the deficiency set forth in the notice with respect to the fiscal year ending January 31, 1970, are barred by section 6501(a), alleging in substance the facts we have heretofore recited.

Section 6501(a) states that except as otherwise provided any tax "shall be assessed within 3 years after the return was filed

---

[1] All references are to the Internal Revenue Code of 1954, unless otherwise indicated.

[2] Respondent in his answer denied petitioner's allegation that it obtained an extension of time for filing its tax return for its taxable year ending Jan. 31, 1970, to July 15, 1970. However, there is attached to petitioner's memorandum filed with its motion for summary judgment a copy of a request for automatic extension for 3 months and respondent has not questioned this exhibit for the purpose of this summary judgment.

[3] Respondent for the purpose of this summary judgment motion admits the statements in an affidavit attached to petitioner's motion as to the proper mailing of the return on July 14, 1970, and, when questioned by the Court as to the envelope, his attorney stated that he had been unable through proper channels to locate the envelope in which the return was mailed and apparently had not kept it. Since the only evidence possibly available to show a postmark date of July 14, 1970, on the envelope was in effect conceded by respondent's attorney to have been destroyed by respondent, we have assumed that a postmark date of July 14, 1970, appeared on the envelope. Respondent does not contend that we should do otherwise.

(whether or not such return was filed on or after the date prescribed)" and section 6501(b) provides that an income tax return "filed before the last day prescribed by law * * * shall be considered as filed on such last day." [4] Petitioner takes the position that its return was filed on July 14, 1970, the date of mailing of its tax return and presumably the postmark date on the properly addressed envelope in which that return was mailed. Petitioner contends that July 14, 1970, is the date its return was filed under the provisions of section 7502. [5]

While petitioner in its memorandum in reply to respondent's memorandum, refers to section 6501(b) as an answer to respondent's argument that to interpret section 7502(a) in the manner petitioner contends is appropriate would require respondent "to indulge in a guessing game," it does not specifically discuss whether under section 6501(b) its return should be deemed as filed on July 15, 1970, rather than its July 14 mailing date. However, since July 14, 1970, was a Tuesday and July 15, 1970, was a Wednesday, whether the return was filed on July 14 or July 15 is immaterial to the issue here presented.

Respondent, while conceding that petitioner's return was timely filed for the purpose of avoiding any addition to tax under section 6651(a)(1) [6] which might otherwise be determined

---

[4] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

(b) TIME RETURN DEEMED FILED.—

(1) EARLY RETURN.—For purposes of this section, a return of tax imposed by this title, except tax imposed by chapter 3, 21, or 24, filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall be considered as filed on such last day.

[5] SEC. 7502. TIMELY MAILING TREATED AS TIMELY FILING AND PAYING.

(a) GENERAL RULE.—

(1) DATE OF DELIVERY.—If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

[6] Sec. 6651(a)(1) provides:

(a) ADDITION TO THE TAX.—In case of failure—

against petitioner, contends that for the purpose of section 6501(a) the filing date of the return is the date on which the return was stamped received, July 17, 1970, and not the date of filing as determined in accordance with section 7502.

Section 6501 does not define the word "filed." However, the longstanding definition of the word "filed" as used in Federal statutes is "delivered." In *United States v. Lombardo,* 241 U.S. 73 (1916), a document was stated to be filed "when it is delivered." That filing means "delivered" has been reiterated on numerous occasions in cases involving the filing date for purposes of applying the revenue laws to documents such as tax refund claims and tax returns. In *Phinney v. Bank of Southwest National Assn., Houston,* 335 F. 2d 266, 268 (5th Cir. 1964), the court, relying on the *Lombardo* case, held an estate tax return to be filed "upon delivery" to the Office of the District Director. In holding a declaration of estimated tax not to be timely filed the court in *Heard v. Commissioner,* 269 F. 2d 911, 913 (3d Cir. 1959), modifying 30 T.C. 1093 (1958), stated that "unless otherwise defined by statute, filing does not occur until the paper to be filed is delivered."

Against the background of the longstanding definition of "filed" as being when the document is "delivered" Congress enacted section 7502(a) providing that when a return, after the date prescribed for its filing, is "delivered" by United States mail to the proper office, the date of the United States postmark stamped on the cover in which the return is mailed "shall be deemed to be the date of *delivery.*"

There is no qualification contained in section 7502(a) that the postmark date is "deemed" to be the date of "delivery" making the postmark date the delivery date only for a limited purpose. That the words "deemed to be the date of delivery" are synonymous with deemed to be the date of "filing" is clear since,

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

if the "deemed delivery" date were not intended to be the date of "filing," the provisions of section 7502(a) would be meaningless. Section 6651(a) provides for an addition to tax for failure to "file" a return on the prescribed date not for failure to "deliver" the return on that date. The word "file" in section 6651(a) is the same as the words "was filed" in section 6501 providing for limitations on assessments. There is no rational basis for giving the word "file" a different interpretation under section 6651(a) from that given it in section 6501.[7] To hold one date to be the filing date under section 6651(a) and another date to be the date the return was filed under section 6501 finds no support in the statutes or legislative history. Respondent in his memorandum relies on the following statement in S. Rept. No. 1625, 89th Cong., 2d Sess., to accompany Pub. L. 89-713, 1966-2 C.B. 803, 809:

> The provision of this bill which permits the Secretary of the Treasury to require the filing of tax returns at service centers would technically require many taxpayers (for example, those in Hawaii) to mail their returns * * * at a much earlier date * * *
>
> For these reasons, the bill amends the existing timely-mailing-timely-filing provisions to include returns and payments of tax. * * *

---

[7] In fact, respondent in Rev. Rul. 74-236, 1974-1 C.B. 348, ruled that "filed" as used in sec. 6611(e) referred to the postmark date where filing had been by timely mailing under the provisions of sec. 7502(a). This ruling states in part:

"Advice has been requested whether, under the circumstances described below, the 45-day period within which no interest is allowable on an overpayment of tax under section 6611(e) of the Internal Revenue Code of 1954 is computed from the date the return is timely mailed under the terms of an extension of time to file or from the date the return is actually received by the Internal Revenue Service.

"The taxpayer's return for the taxable year 1970 was due on March 15, 1971. An extension of time to file was granted to September 15, 1971. On September 15, 1971, the taxpayer mailed its return, showing an overpayment, to the Service by registered mail. The return was received by the Service on September 17, 1971.

"Section 6611(e) of the Code provides that no interest will be paid if a refund is made within 45 days after the last date prescribed for filing the return (determined without regard to an extension of time for filing) or, if the return is filed after such last date, the refund is made within 45 days after the return is filed. * * *

"The taxpayer's return was sent by United States registered mail on September 15, 1971, which was the prescribed date for filing, including the extension granted. Under section 7502(c)(1)(B) of the Code, the registration date is deemed the postmark date. There is no provision excepting section 6611(e) from the provisions of section 7502. Therefore, the taxpayer's return is considered filed on September 15, 1971, and not on September 17, 1971, when the return was received by the Service.

"Accordingly, since the taxpayer timely mailed its return on September 15, 1971, under the terms of an extension to file on or before that date, the date the return was mailed is to be used in computing the 45-day period within which no interest is allowable on an overpayment under section 6611(e) of the Code."

In our view, even if this limited quotation from the Senate report properly reflects the underlying reasons for the enactment of section 7502, it does not cause that section not to be properly interpreted in accordance with its clear language. However, other portions of the same Senate report give a clear indication that the Senate considered that when the provisions of section 7502 had been met the postmark date of the envelope in which the return was mailed was the filing date of the return.[8]

---

[8] Other portions of this report state as follows:

S. Rep. No. 1625, 89th Cong., 2d Sess., 1966-2 C.B. 803, 804, 809:

4. The bill also provides that the timely mailing of a tax return or payment is to be considered timely filing or timely payment. As a result, where the postmark on an envelope in which an individual income tax return and payment are enclosed shows that it was mailed on or before the due date, the return and payment will be considered as filed or paid on time even though received after the due date.

\* \* \*

7. Timely Mailing Treated as Timely Filing Extended to Returns and Payments (Sec. 5 of the Bill and Sec. 7502 of the Code)

Present law provides that where a claim, statement, or other document, which is required to be filed by a specified date is properly mailed, the postmarked date is to be considered as the date on which it was filed. This provision, however, does not apply to a return or to a payment of tax. The bill extends this rule to tax returns and payments.

\* \* \*

The existing timely-mailing-timely-filing provision was enacted in 1954. At that time the rule was a new concept with which the Internal Revenue Service had had no experience. For this reason, the Service was concerned with applying it to returns and payments because of unforeseen problems which it believed might develop. Experience with the present provision since 1954 has allayed these fears, and in fact, the Service has in practice generally treated returns and payments which were mailed before the due date as being filed or paid on time.

For these reasons, the bill amends the existing timely-mailing-timely-filing provisions to include returns and payments of tax. However, the special provision relating to registered mail which provides that registration is prima facie evidence of delivery is extended to returns but not to payments of tax. In addition, the timely-mailing-timely-filing provisions, as amended by the bill, are not applied to currency or other medium of payment unless they are actually received and accounted for, or to returns, claims, statements, or other documents or payments which are required to be delivered by any method other than by mailing. This latter exception applies, primarily, to certain documents relating to alcohol taxes which are required to be submitted directly to the internal revenue officer present on the manufacturer's premises.

Present law contains a special provision dealing with postmarks which are not made by the U.S. Post Office. Under the bill, this provision will apply to returns and payments as it has in the past to other documents filed with the Internal Revenue Service. Among the postmarks to which this provision applies are those made by postage metering machines. By continuing this provision of present law, this committee does not intend to downgrade postal metering devices. Applying the rule of present Treasury Department regulations, if an envelope (containing a tax return) bearing an April 15 postmark made by a postage meter is received by the Internal Revenue Service not later than the time it would ordinarily have been received had it been postmarked April 15 by the U.S. Post Office at the same point of origin, the return is considered as filed on April 15. In addition, where there is a delay in the receipt of a metered return by the Internal Revenue Service, if the person who is required to file the return established that it was actually deposited in the mail at a time at which stamped letters deposited at that location received timely postmarks and the delay was due to the postal service, the return will be treated as timely filed as in the case of stamped returns.

Further, in our view the case of *Brown v. United States,* 391 F. 2d 653 (Ct. Cl. 1968), dealing with the date of filing of a return to which the provisions of section 7503 are applicable indicates that provisions of such statutes as section 7502 and section 7503 are applicable to all sections of the Code with reference to the date a return is "filed." That case involved a return which was "delivered" to the Office of the District Director on Monday, April 16. Section 7503,[9] there involved, provides that when the last day for performance of an act falls on Sunday "the performance of such act shall be considered timely" if that act is performed on the next succeeding day. Therefore, the delivery on Monday, April 16, of a return was held to be a timely filing on April 16 and not a "deemed" filing on April 15. The Court referred to April 16 as being "the stipulated actual filing date." Here the question is whether the "actual filing date" is the date of July 17 stamped on the return as the date of its receipt or is the statutory delivery date of the return of July 14 as shown by the postmark.

In the *Brown* case, the court stated its disagreement with the taxpayer's contention that the effect of section 7503 "*is to treat*" the return as if filed on April 15 since the clear words of the statute "merely considers" the filing on Monday, April 16, timely. In the present case, had the return been "actually filed"

Also, sec. 301.7502-1, Proced. & Admin. Regs., provides:

Sec. 301.7502-1. Timely mailing treated as timely filing—(a) *General rule.* Section 7502 provides that, if the requirements of such section are met, a document shall be deemed to be filed on the date of the postmark stamped on the cover in which such document was mailed. Thus, if the cover containing such document bears a timely postmark, the document will be considered filed timely although it is received after the last date, or the last day of the period, prescribed for filing such document.

This section does not reflect the amendments made by Pub. L. 89-713 but indicates to us that prior to that amendment a document was, as a "General rule," considered filed as of the postmark date.

[9] SEC. 7503. TIME FOR PERFORMANCE OF ACTS WHERE LAST DAY FALLS ON SATURDAY, SUNDAY, OR LEGAL HOLIDAY.

When the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday. For purposes of this section, the last day for the performance of any act shall be determined by including any authorized extension of time; the term "legal holiday" means a legal holiday in the District of Columbia; and in the case of any return, statement, or other document required to be filed, or any other act required under authority of the internal revenue laws to be performed, at any office of the Secretary or his delegate, or at any other office of the United States or any agency thereof, located outside the District of Columbia but within an internal revenue district, the term "legal holiday" also means a Statewide legal holiday in the State where such office is located.

on July 17 it would have been untimely and not *considered timely* under section 7502(a) or any other provision of the Code. It is because under section 7502(a) the return was by statute "actually filed" on July 14 that it was timely. The import of the *Brown* case is that section 6501 is dependent on the sections governing filing, there section 7503 but here section 7502(a), for its application.

As contrasted to the "considered timely" words of section 7503, the provision of section 7502(a) is that the postmark date is "deemed" or is to be "treated as" the delivery date.

In our view, had section 7502(a) been intended to apply only to alleviate the addition to tax provided by section 6651(a), Congress would have clearly so stated or certainly would not have used the words that the postmark date shall be "deemed the date of delivery" in view of the longstanding rule of the delivery date of a document being synonymous with its filing date.

Petitioner's motion for summary judgment is granted, and

*An appropriate order will be issued.*

Reviewed by the Court.

SIMPSON, *J.,* dissenting: In its decision today, the Court has adopted a mechanistic approach to the interpretation of the statute. Though the meaning of the statute is far from explicit, the Court has virtually ignored the legislative history and refused to adopt an interpretation tailored to carry out the purposes for the enactment of section 7502 and for making it applicable to tax returns. Furthermore, the Court has unnecessarily adopted an interpretation that applies the statute of limitations and deprives a party of its day in court. I cannot agree with such an approach to the construction of the statute.

In relevant part, section 7502(a)(1) provides:

(1) DATE OF DELIVERY.—If any return, claim, statement, or other document required to be filed * * * within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed * * *, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document * * *, is mailed shall be deemed to be the date of delivery * * *

Such provision does not state whether the postmark date is to be treated as the date of delivery only for purposes of determining whether a return, claim, statement, or other document has been filed within the prescribed period or on or before the prescribed date, or whether such rule is to be applied for all purposes under the internal revenue laws. It is that question which we must answer in this case.

It is true, as the majority assumes, that as a general rule, when a term or phrase is defined for one purpose, it may be assumed that the term or phrase was intended to have the same meaning for all purposes. See *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 87 (1934); *Whirlpool Corp.,* 61 T.C. 182, 187 (1973). However, the majority fails to recognize that such principle is merely a general rule; the courts have repeatedly held that the meaning of a term or phrase must be ascertained in the light of the circumstances surrounding its enactment. For example: *Helvering v. Morgan's Inc.,* 293 U.S. 121, 128 (1934), held that the term "taxable year" had a more expansive meaning when used in section 206(b) of the Revenue Act of 1926 than when it was used in section 200(a) of the same Act. *Helvering v. Stockholms Enskilda Bank, supra,* held that the term "interest-bearing obligations," for purposes of section 217 of the Revenue Act of 1926, had a broader meaning than when it was used in section 213(b)(4) of the same Act. *Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433 (1932), held that for purposes of section 3 of the Sherman Antitrust Act, the term "restraint of trade" had a more inclusive meaning than such term when used in section 1 of such Act. *American Security & Trust Co. v. Commissioners of the District of Columbia,* 224 U.S. 491, 494 (1912), held that an act of Congress relating to a local matter in the District of Columbia was not a "law of the United States" for purposes of conferring appellate jurisdiction on the United States Supreme Court under section 250 of the Judicial Code of March 3, 1911, 36 Stat. 1087, ch. 231, even though such act of Congress might constitute a "law of the United States" within the meaning of the third clause of that section. In deciding on the scope of section 7502, the Court has refused to be guided by the circumstances which caused Congress to make it applicable to tax returns.

Before section 7502 was made applicable to tax returns in 1966, it had long been settled that a return was "filed" so as to

start the running of the statute of limitations only when it was actually received by the IRS. *Phinney v. Bank of the Southwest National Assn., Houston,* 335 F. 2d 266 (5th Cir. 1964); *W. H. Hill Co. v. Commissioner,* 64 F. 2d 506 (6th Cir. 1933), affg. 22 B.T.A. 1351 (1931), cert. denied 290 U.S. 691 (1933); *O'Bryan Brothers,* 42 B.T.A. 18 (1940), affd. 127 F. 2d 645 (6th Cir. 1942), cert. denied 317 U.S. 647 (1942); see *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 187 (1957); *Lucia v. United States,* 474 F. 2d 565, 570 (5th Cir. 1973); *United States v. Thompson,* 262 F. Supp. 340, 342 (S.D. Tex. 1966); cf. *United States v. Lombardo,* 241 U.S. 73, 76 (1916); *Real Estate Corp. v. Commissioner,* 301 F. 2d 423, 428-429 (10th Cir. 1962), affg. 35 T.C. 610 (1961), cert. denied 371 U.S. 822 (1962); *Edward Barron Estate Co. v. Commissioner,* 93 F. 2d 751, 753 (9th Cir. 1937), affg. 34 B.T.A. 1256 (1936); *Poynor v. Commissioner,* 81 F. 2d 521, 522 (5th Cir. 1936), affg. a Memorandum Opinion of this Court; *Lewis-Hall Iron Works v. Blair,* 23 F. 2d 972, 974 (D.C. Cir. 1928), cert. denied 277 U.S. 592 (1928); *Frank A. Gray,* 16 T.C. 262, 266 (1951). As a result of such interpretation, the Commissioner had a full 3-year period in which to examine a taxpayer's return and carefully prepare a notice of deficiency, if necessary. The question thus arises as to whether, when section 7502 was made applicable to tax returns, the change was also meant to affect the time when the statute of limitations would begin to run.

After its amendment in 1966, section 7502(a) was made applicable to returns "required to be filed * * * within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws." Since the provision only applies when a return or other document is required to be filed "within a prescribed period or on or before a prescribed date," it is clear from the words of the statute that Congress had in mind those taxpayers who were required to meet such filing requirements and that the provision was designed to provide relief for them. This view is reinforced by the heading given to section 7502, "Timely Mailing Treated as Timely Filing * * *." Although the heading of a provision is not a part of it, the Supreme Court has stated that it may be examined to ascertain the intent of Congress and to resolve any ambiguity in the statute. *Federal Trade Commission v. Mandel Brothers,* 359 U.S. 385 (1959); *Maguire v. Commissioner,* 313 U.S. 1 (1941); *White*

*v. United States,* 191 U.S. 545 (1903); *Coosaw Mining Co. v. South Carolina,* 144 U.S. 550 (1892); *Church of the Holy Trinity v. United States,* 143 U.S. 457 (1892). The title of the section also indicates that the time of mailing is taken into consideration only for the purpose of determining whether the filing is timely—it does not indicate that the time of mailing is to be treated as the time of filing for all purposes.

The legislative history of the 1966 amendment furnishes additional support for such view. The amendment of section 7502 to include tax returns within the timely-mailing-timely-filing rule was made by section 5 of the Act of November 2, 1966, Pub. L. 89-713, 80 Stat. 1110. Section 1(a) of that Act authorized the Secretary of the Treasury to require the filing of tax returns at regional service centers rather than at the district offices. Congress was concerned that such a change in the place of filing tax returns would "technically require many taxpayers (for example, those in Hawaii) to mail their returns * * * at a much earlier date in order to *insure delivery by the due date."* (Emphasis supplied.) S. Rept. No. 1625, 89th Cong., 2d Sess. (1966), 1966-2 C.B. 803, 809. In explaining the provision to the House, Mr. Mills said:

Technically, under present law taxpayers could be required—*if they hope to avoid penalties for late filing*—to mail their returns and payments at a sufficiently earlier date before the filing date so that they arrived at the tax offices by the due date. * * * This bill gives specific sanction to * * * the practice * * * [of the IRS in accepting returns as timely if the postmark so indicates]. [112 Cong. Rec. 21786 (1966); emphasis supplied.]

It is thus clear that section 7502 was made applicable to tax returns to prevent the imposition of late filing penalties which might have resulted because of the extra time required for returns to reach the more remote regional service centers rather than the closer district offices. Every statement in the legislative history manifests that Congress' only concern was to assist taxpayers in meeting the time requirements, there is not one iota of evidence indicating that Congress considered that the amendment would affect the running of the statute of limitations and shorten the period of time given to the Commissioner for the examination of returns. Nor is there any evidence that Congress contemplated or recognized that the amendment would have general applicability. Furthermore, it is clear that the salutary purpose intended by Congress can be accomplished without

affecting the running of the statute of limitations on assessments. Section 7502 is remedial legislation with an evident limited purpose. With respect to the construction of such legislation, the Supreme Court has instructed: "Nor can the doctrine that remedial legislation is entitled to liberal construction * * * be stretched to expand the reach of a statute of such evident limited purpose as this one." *United States v. Zacks,* 375 U.S. 59, 68 (1963).

The legislative history of the statute of limitations strongly suggests that Congress wanted the Commissioner to have a full 3-year period in which to assess a deficiency. Section 275(a) of the Revenue Act of 1934, ch. 277, 48 Stat. 745, increased the general limitation period from 2 to 3 years. The House committee report stated the following reasons for the increase in the statutory period from 2 years:

Experience has shown that this period is too short in a substantial number of large cases, resulting oftentimes in hastily prepared determinations with the result that additional burdens are thrown upon taxpayers in getting ill-advised assessments removed. In other cases, revenue is lost by reason of the fact that sufficient time is not allowed for disclosure of all the facts. * * * [H. Rept. No. 704, 73d Cong., 2d Sess. (1934), 1939-1 (Part 2) C.B. 554, 580.]

Moreover, the same 3-year period is applicable from the date the return is filed, whether or not the filing is timely for other provisions of the Code. Thus, section 6501(a) provides in relevant part:

(a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed *(whether or not such return was filed on or after the date prescribed)* * * * [Emphasis supplied.]

Yet, by its decision today, the Court has reduced the period allowed the Commissioner for examining returns and making assessments. Ordinarily, the reduction in such period will be only slight—the several days ordinarily required by the U.S. Post Office to deliver a tax return, but if a return is misplaced by the post office, the reduction in such period will be substantial.

What is more, the majority's interpretation of section 7502 will have many other consequences. For example, as a result of this decision, the time within which a taxpayer must file a claim for refund under section 6511(a) will be shortened. Section 6511(a) provides that a claim for refund must be filed within 3 years from the time the return was *filed,* or 2 years from the time

the tax was paid, whichever period expires the later. Traditionally, it was thought that the 3-year period commenced to run from the time the IRS actually received the taxpayer's return. However, under the majority's interpretation, the return will be "filed" as of the date of the postmark, and the taxpayer's period for filing his claim for a refund will be reduced accordingly. In like manner, the period allowed the Commissioner for the consideration of a claim for refund will be shortened. Section 6532(a) provides that a taxpayer may not institute a suit for refund before the expiration of 6 months from the date of filing of his claim for refund with the IRS, unless the Commissioner denies the claim before the expiration of such period. Heretofore, it has been assumed that the Commissioner has had a full 6-month period in which to decide whether to honor the claim for refund. There is absolutely no indication in the legislative history of the amendment making section 7502 applicable to tax returns that Congress considered or recognized that its change would have any such widespread results.

The majority's treatment of *Brown v. United States,* 391 F. 2d 653 (Ct. Cl. 1968), is baffling. *Brown* dealt with section 7503, which provides that where the last day for performing any act falls on a Saturday, Sunday, or legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or legal holiday. In *Brown,* for purposes of a summary judgment motion, it was assumed that the IRS actually received the return on Monday, April 16, 1956, although it was due the day before, Sunday, April 15, 1956. The court agreed that the return was "timely," but the issue was whether the statute of limitations commenced from the actual date of receipt or from April 15, 1956. The taxpayer argued that the statute of limitations commenced from April 15, 1956, on the ground that the return could only be timely because section 7503 treated the return as though it were filed on April 15, 1956. The taxpayer argued that the return ought to be considered "filed" for all purposes on April 15, 1956. The court rejected this argument and stated at 391 F.2d 655-656:

We do not agree with the plaintiffs' position that the legal effect of section 7503 * * * is to treat their return as if it was filed on Sunday so that the limitation period on assessment of a deficiency begins to run from Sunday, April 15. Section 7503 merely considers the performance of such act on the next succeeding business day as being timely and does not operate to negate the effect

of the actual date of performance for other purposes, i.e., the actual date of filing for commencing the limitation period on assessments. By its terms, section 7503 does not purport to diminish the statute of limitations for making assessments.

Thus, the fact is that in *Brown,* the taxpayer took the position that the enactment of section 7503 changed the time of filing for purposes of the beginning of the running of the statute of limitations—a position similar to that adopted by the petitioner in this case, and the Court of Claims unequivocally rejected such position.

Finally, this case arose because the Commissioner asserted that the petitioner owed a very large tax deficiency. By its holding today, the Court has decided that the statute of limitations has run on the assessment of such deficiency and that the merits of the controversy need not be adjudicated. It has often been held that statutes of limitations should be construed narrowly and that courts should be reluctant to interpret them in such a manner as to restrict the activities of the United States. See *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 187 (1957); *Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 249 (1930); *E. I. DuPont de Nemours & Co. v. Davis,* 264 U.S. 456, 462 (1924); *Lucia v. United States,* 474 F. 2d 565, 570 (5th Cir. 1973); *McDonald v. United States,* 315 F. 2d 796, 801 (6th Cir. 1963); *Pacific Coast Steel Co. v. McLaughlin,* 61 F. 2d 73, 75 (9th Cir. 1932), affd. 288 U.S. 426 (1933); *Loewer Realty Co. v. Anderson,* 31 F. 2d 268, 269 (2d Cir. 1929), cert. denied 280 U.S. 558 (1929); *J. Friedman & Co.,* 16 B.T.A. 1119, 1122 (1929); *August Belmont Hotel Co.,* 15 B.T.A. 1215, 1217 (1929). For my part, I hate to see the Court unnecessarily construe a statute so as to deprive any party of his day in court. *Samuel J. King,* 51 T.C. 851 (1969); *Associates Investment Co.,* 59 T.C. 441 (1972). When one considers these principles and considers that the legislative history surrounding the enactment of section 7502 contains absolutely no indication that the change was intended to affect the running of the statute of limitations, I conclude that section 7502 should not be applicable in determining when the statute of limitations commences to run.

DRENNEN and IRWIN, *JJ.,* agree with this dissent.