DOUGLAS A. PAGE AND CAROLYN PAGE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Page v. Commissioner
Docket Nos. 18580-84, 822-85.
United States Tax Court
T.C. Memo 1986-275; 1986 Tax Ct. Memo LEXIS 336; 51 T.C.M. (CCH) 1351; T.C.M. (RIA) 86275; July 3, 1986. Randall D. B. Tigue, for the *338 petitioners. Jack Forsberg, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, on March 13, 1984, issued duplicate original statutory notices of deficiency for the taxable year 1980 to Douglas A. Page and Carolyn Page. On May 1, 1984, respondent issued a statutory notice of deficiency to Douglas A. Page concerning his 1979 and 1981 taxable years. Therefore, on October 22, 1984, respondent issued a notice of deficiency to Douglas A. Page concerning his 1982 taxable year. Douglas A. and Carolyn Page joined in a petition to this Court with respect to the statutory notices issued on March 13, 1984, and May 1, 1984 (docket No. 18580-84). Douglas A. Page filed a separate petition with respect to the statutory notice of deficiency dated October 22, 1984 (docket No. 822-85). The two petitioned cases have been consolidated for purposes of trial, briefing and opinion. The taxable period, amount of tax and additions to tax contained in respondent's determinations with respect to each of the petitioners are as follows: Docket No. 18580-84: Section
Section
Section
Section
Petitioner
Year
Deficiency
6651(a) [1]
6653(a)
6653(a)(2)
6654
Douglas A. Page
1979
$13,264
$3,307
$663
$553
Douglas A. and
1980
9,640
482
Carolyn Page
Douglas A. Page
1981
16,277
814
50% of
interest
due on
$16,277
Docket No. 822-85: Douglas A. Page
1982
$17,970
$4,493
$899
50% of
$1,749
interest
due on
$17,970
*339 The issues that are presented for our consideration, are as follows: (1) Whether Douglas A. Page filed a return for the taxable year 1979 which commenced the running of the three-year statute of limitations upon assessment so as to preclude respondent from issuance of the statutory notice of deficiency for the taxable year 1979; (2) whether the relationship of petitioners to their church during the years in question would permit them to avoid taxation on various forms of income generated by them; (3) whether Douglas A. Page is liable for an addition to tax for failure to file under section 6651(a) for the taxable year 1979; [2] (4) whether Douglas A. Page is liable for an addition to tax for failure to pay estimated taxes under section 6654 for the taxable years 1979 and 1982; (5) whether either petitioner is liable for additions to tax for negligence under section 6653(a) for the taxable years in question; and (6) whether damages should be awarded pursuant to respondent's *340 motion under section 6673. At the time of joining in the petition in docket No. 18580-84, Carolyn Page resided in Lakewood, California. At the time of joining in and filing one petition and the filing of the other, Douglas A. Page (petitioner) resided at Eden Prairie, Minnesota, and Golden Valley, Minnesota, respectively. Petitioner, a high school graduate who completed three years of college, is an ordnance engineer by profession. During 1978, petitioner became familiar with Jerome Daly and, through Daly, was asked to become a member of the Basic Bible Church of America and to assist in the management and promotion of the Basic Bible Church. In May 1978, petitioners received from Jerome Daly a number of preprinted forms which petitioners executed, the substance of which is described as follows: A Basic Bible Church charter; bylaws for Chapter No. 8035; a certificate of ordination for each of the petitioners; statements *341 as to the status of petitioners as ministers; letters directing petitioners to perform certain functions as ministers; and a vow of poverty. Copies of these pro forma documents are attached to this Opinion as Appendix A (reproduced literally). Petitioners' chapter of the Basic Bible Church, No. 8035 (Chapter 8035), had never requested or received from the Internal Revenue Service an exemption letter concerning their chapter. The Basic Bible Church of America, however, was listed as a tax-exempt organization in the Internal Revenue Service's Publication 78. Although the Basic Bible Church had received tax-exempt status from the Internal Revenue Service, that status was retroactively revoked by the Service's determination during October 1981. [3]
During August 1978, petitioners, by quitclaim deed, transferred legal title of their residence *342 from themselves as joint tenants to themselves as trustees for Chapter 8035. Further, during December 1978, petitioners opened a checking account at the First Minnetonka City State Bank in the name of the Basic Bible Church of America. From December 1978 until mid-1982, petitioners were the only signatories on the Basic Bible checking account, First Minnetonka City State Bank. In May 1980, petitioners opened a savings account at Ridgedale State Bank of Minnetonka in the name of Doug and Carol Page, in trust for Basic Bible Church of America. The three original named trustees of Chapter 8035 were petitioners and one Wayne Chermack (Chermack). During July 1979, Ralph Brown and petitioner's brother, Steven Page, were added to the Board of Trustees upon the advice of petitioners' attorney in order to give the Board of Trustees the appearance of independence from petitioners. Neither Ralph Brown nor Steven Page attended any meetings of Chapter 8035, other than the July 11, 1979, meeting. All trustees of Chapter 8035 served at petitioners' pleasure. Chapter 8035, through petitioners, sought to obtain an exemption from real estate tax from Hennepin County, Minnesota, for petitioners' *343 residence which had been deeded to themselves in trust for Chapter 8035. Petitioners' application for a real estate tax exemption on the grounds that it was a church or house of worship was administratively denied and the denial was affirmed by both the Minnesota Tax Court and Supreme Court of the State of Minnesota. The Tax Court of the State of Minnesota found that the property in question was not used primarily for religious or church purposes and that the property was not owned by a church. During 1980, petitioners changed the name of their chapter to the American Fundamentalist Church, which they incorporated in order to remedy one of the deficiencies found by the Minnesota State Tax Court. Additionally, petitioners through that the name "Basic Bible Church" had acquired undesirable connotations in the community. In connection with the incorporation, petitioners opened a checking account at the First Minnetonka City State Bank in the name of the American Fundamentalist Church. Initially, petitioners were the only signatories on the account and, shortly thereafter, one John Frayne was added as a signatory to the account. In connection with the incorporation and name change *344 to the American Fundamentalist Church, petitioners did not take a vow of poverty or execute as many new documents as they had with respect to the Basic Bible Church. Other than the opening of a newly denominated checking account and transferring the "church property" from the Basic Bible Church, under which designation the property had been trusteed, to the American Fundamentalist Church there is no evidence of the transfer of other assets. Although there is evidence that individuals other than petitioners had a signatory authority on the various checking accounts, there is no evidence in the record that that authority was ever exercised. Further, it appears from the record that petitioner(s) had the ability and/or authority to remove and/or appoint trustees to either the Basic Bible Church or the American Fundamentalist Church chapter which they had formed. Petitioner has earned his living in the ordance area as an explosives expert. He was employed by Technical Ordnance, Inc., from 1974 through 1979. During 1979, 1980, 1981 and 1982, petitioner performed consulting services or was employed by the following entities for remuneration as shown: Firm
1979
1980
1981
1982
Technical Ordnance,
$37,117.30
Inc.
Technical Advisory
304.00
$1,562.74
Service, Inc.
E. Walters & Co.,
4,532.00
Inc.
City of Minnetrista
3,582.25
Possis Corporation
26,870.06
$41,081.34
$43,442.08
*345 From the time petitioner formed Chapter 8035, he began supplying notices to his employers or clients advising of his "vow of poverty" and that he "will be on the job as a Minister and Agent of said Church." Additionally, he supplied to some of his clients documents entitled "Agreement" which provided that the clients were contracting with Chapter 8035 for petitioner's services and/or that petitioner was acting as an agent and/or minister of Chapter 8035. In some instances the clients or employers followed petitioner's instructions and in others they insisted on dealing directly with petitioner. All checks in payment for services were issued to petitioner, individually. Where social security or an identification number was required, petitioner supplied, and the clients used, identification other than petitioner's own social security number. Some clients did not issue Forms W-2 or 1099. Those firms that utilized a Form 1099 used Form 1099NEC, which reflects on its face that it is specialized for nonemployee compensation. After forming Chapter 8035, petitioner submitted Forms W-4 to Technical Ordnance, Inc., reflecting between 33 and 200 exemptions. During the year 1980, Carolyn *346 Page was employed by Employers Overload Company to whom she submitted a letter stating she was exempt from taxation due to her relationship with Chapter 8035. During 1980, Carolyn Page was paid $1,402.51 for services rendered to Employers Overland Company. Petitioners deposited only a limited portion of receipts for their services into the church bank accounts because of their belief that respondent would levy upon the bank accounts. The remainder of the receipts was maintained in the form of cash and silver coins. The cash and coins were kept in a metal box in petitioners' presence at their residence which they had deeded to Chapter 8035. The Valley View property (residence) was purchased in 1974 by petitioners for use as a single-family residence in a residential neighborhood. Throughout the years in issue petitioner paid the monthly payment on the contract for deed on the residence from his personal checking account. Petitioner was reimbursed from the church bank accounts or the cash on hand. Petitioners and their children resided in the residence during all years in issue, with the exception of 1982 when Carolyn Page lived in California and apart from petitioner. The residence *347 was a two-level building with the upper level containing the usual living quarters. The lower level contained the following areas, as designated in petitioner's testimony: Workshop, chapel, office, and a furnace and utility area. The chapel, which was smaller than the office, contained two pews, some chairs, a bookshelf and a pool table. All expenses for heating gas, electric, telephone, water and trash pickup were paid by checks drawn on the church accounts. Maintenance and improvements on the residence were paid by check drawn on Chapter 8035 bank accounts. Furniture and appliances for both levels of the residence were purchased from Chapter 8035 bank accounts. Medical expenses and food for petitioners and their family were paid from Chapter 8035's accounts. Petitioners' automobiles were placed in Chapter 8035's name and used by petitioners and their family. An airplane was also associated with Chapter 8035, which paid for hangar fees, annual inspection fees, repairs and insurance. Sometime in 1982, Carolyn Page and petitioner experienced marital difficulties, either caused by or in addition to differences concerning Chapter 8035. As a result, Carolyn moved to California *348 during 1982 and was eventually divorced from petitioner during December 1984. Sometime during 1982, petitioner became more familiar with one Kathleen Grossinger (Kathleen), who during that year developed a close personal relationship with petitioner. Kathleen sometimes stayed overnight at the residence. At one point, about May of 1982, Kathleen's name was added to Chapter 8035's bank account and shortly thereafter, petitioner caused Carolyn's name to be removed as a signatory on the account. Kathleen also became the "keeper" of the cash box containing cash and silver coins. In May 1982, Carolyn resigned as a trustee and Kathleen became a trustee. Petitioners advertised in the church directory of a local newspaper, distributed religious literature and held meetings at the residence on Fridays at 6:30 p.m. Petitioners' meetings or services usually involved a nucleus of petitioners' family and a few friends and, on occasion, no one attended. On occasion, petitioner had larger groups attend on Friday evening. The subject matter of petitioners' "services" or "seminars" were political in nature and protested against big government, taxation, regulations, social security and related *349 topics which petitioner believes attributable to an "oppressive government." Additionally, petitioners' advertisements offer the option of joining the Basic Bible Church to, in part, have "Freedom from oppressive, big, government through self-reliance." Petitioners' advertisement also offers the option to "join and set up your own auxiliary church * * *." Petitioner took care to maintain a personal checking account separate from the account maintained for Chapter 8035. Additionally, petitioner reported a "stipend" of $2,000 for 1978, $3,100 for 1980, $3,600 for 1981 and $4,800 for 1982. For 1981 and 1982, petitioner reported $360 and $240, respectively, for "personal use of church auto." Although petitioners earned about $40,000 in wages in each of the taxable years in issue, they did not report more than about $300 of tax for any of those years. Generally, the number of personal exemptions was sufficient to reduce the amount of adjusted gross income (essentially the stipend) to zero or to a nominal amount. Petitioners filed timely joint individual income tax returns for 1978 and 1980. Petitioner filed timely individual income tax returns for 1981 and 1982. For the taxable *350 year 1979 petitioner, on April 9, 1980, filed a State of Minnesota income tax return with an unsigned copy of his joint individual 1979 Federal income tax return attached. It was also petitioner's practice to submit an unsigned copy of his State income tax return with his signed Federal return. Petitioners' 1979 State income tax return was dated and signed April 4, 1980. Petitioner, on April 4, 1980, mailed a document by certified return receipt mail to the Internal Revenue Service Center at Ogden, Utah. Said document was received by the Ogden Service Center on April 7, 1980. On April 14, 1980, the State of Minnesota, Department of Revenue, received an unsigned copy of petitioners' State of Minnesota income tax return from the Internal Revenue Service. On July 31, 1980, the State of Minnesota forwarded said unsigned State return to petitioners "since [they] have already filed [petitioners'] 1979 Minnesota return * * *." Petitioner, during 1981, corresponded with respondent regarding his 1979 return and a possible refund. At the time of trial the records of respondent did not reflect that petitioners filed a 1979 Federal income tax return. Petitioners filed a timely 1979 *351 joint individual Federal income tax return which respondent has either lost or misplaced. OPINION 1979 Taxable Year - Whether Petitioners Filed a Return
Petitioner contends that he timely filed a 1979 Federal income tax return on or before April 15, 1980, and that the three-year statute of limitations upon assessment (sec. 6501) had expired on May 1, 1984, when respondent mailed a statutory notice of deficiency covering the 1979 taxable year. Respondent contends that petitioner did not file a 1979 Federal income tax return and that the statute of limitations on assessment remains open and that petitioner should be liable for an addition to tax for late filing (sec. 6651(a)). We agree with petitioner. Petitioner has carried his burden of proving that the statute of limitations on assessment for 1979 has run. United States v. Gurley,415 F.2d 144, 147 (5th Cir. 1969); Espinoza v. Commissioner,78 T.C. 412, 421 (1982). Under section 6501(a) the statute of limitations, in general, runs three years from the date on which the return is due to be *352 filed or was actually filed, whichever is later. Section 301.6501(a)-1(a), Proced. & Admin. Regs., repeats the statutory rule. As a general rule, a return is deemed "filed" when it has been physically delivered to that office of respondent where the return is due to be filed. Hotel Equities Corp. v. Commissioner,546 F.2d 725 (7th Cir. 1976), affg. 65 T.C. 528 (1975); Phinney v. Bank of the Southwest National Association,335 F.2d 266 (5th Cir. 1964). In certain rare instances, as in this case, where a return is purportedly mailed but never received, courts have presumed receipt and subsequent loss by respondent's employees, where sufficiently precise proof is provided as to the mailing of a missing tax return. Jones v. United States,226 F.2d 24 (9th Cir. 1955); Crude Oil Corp. of America v. Commissioner,161 F.2d 809 (10th Cir. 1947), revg. and remanding 6 T.C. 648 (1946); Carlin v. Commissioner,T.C. Memo. 1981-694; Workman v. Commissioner,T.C. Memo. 1977-378; Harzvi v. United States, an unreported opinion ( E.D. N.Y. 1973, 32 AFTR 2d 73-5722, 73-2 USTC par. 9712). *353 Petitioner has provided substantial and credible evidence which circumstantially confirms his testimony and supports our finding that a return was filed for 1979 and is now, for some unexplained reason, not available. The factors which place this case in the exceptional situation where we will presume receipt of a missing tax return are: Petitioner filed returns for years before and following 1979; petitioner filed a State return and attached a copy of his 1979 Federal return; respondent sent a copy of petitioner's 1979 State return to the State and it was petitioner's practice to attach a copy of his State return to a signed original of his Federal return; petitioner has return-receipt proof of the receipt of certified mail by respondent on similar dates as the State return was mailed and filed; petitioner corresponded, within a reasonable time, with respondent concerning the whereabouts of his 1979 income tax refund. We accordingly find that petitioner filed a timely Federal individual income tax return for 1979 and that the three-year statute of limitations on assessment expired prior to May 1, 1984, when respondent mailed a statutory notice of deficiency which, in part, determined *354 deficiencies for 1979. In view of the foregoing, we find that there is no deficiency in income tax or additions to tax due from petitioner, Douglas A. Page, for the 1979 taxable year. [4]
1980, 1981 and 1982 Taxable Years - Church Related Issues
Petitioners contend that their relationship with their "church" places them in a position which would permit them to pay little or no tax on income earned for their services. They argue, in the alternative, that they were either agents of their "church" so that the income was not taxable to them, but to their "principal," or that they are entitled to deduct as charitable contributions any income donated to their "church." Respondent contends that all income of petitioners was earned by them and not as agents and/or that petitioners are not entitled to deductions for charitable contributions because *355 petitioners' "church" was not an organization of the type described in section 170(c)(2). There are also additions to tax under sections 6653(a) and 6654 and the question of damages pursuant to respondent's motion under section 6673, all of which are still in dispute. Contributions Under Sec. 170(c)(2)
Initially, we consider the question of whether petitioner has shown an entitlement to a deduction for a charitable contribution under section 170(c)(2) for income given or assigned to Chapter 8035. We are not questioning whether Chapter 8035 is in fact a church or whether petitioners' practices constitute a religion. The specific question that respondent has posed is whether Chapter 8035 was "organized and operated exclusively for religious * * * purposes" or whether "[any] part of the net earnings * * * inure[d] to the benefit of [petitioners]." Sec. 170(c)(2)(B) and (C). Petitioners bear the burden of proving they are entitled to the claimed deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). This Court has, on numerous occasions, addressed these questions under similar factual circumstances as those presented in this case. Some *356 examples of these occasions may be found in McGahen v. Commissioner,76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983); Stephenson v. Commissioner,79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). Although petitioners in this case were more meticulous in their execution of pro forma and other documents and in organizing and operating their "church," it is abundantly clear that substantially all of the "earnings" of the "church" inured to their benefit and that of their family. Petitioner caused it to, in form, appear that he had no control over the "church" funds or bank accounts, but in reality he retained and exercised control over all money and property involved. When petitioner and his wife disagreed about Chapter 8035, petitioner caused the removal of his wife from the "trusteeship," signatory authority on bank accounts, and custodial control over the cash box. All of the authority that petitioner contends was outside his control was simply *357 transferred to petitioner's close personal female friend with whom petitioner had become more familiar after his wife departed for California. Moreover, when petitioner was unhappy with the reputation that the "Basic Bible Church" name had acquired, he simply "transferred" all assets to a new "church" in spite of the various documents he had originally signed separating himself from the various assets. No new vow of poverty form was executed in connection with the new "church." Nothing essentially changed in the source and nature of the payment of petitioners' personal living expenses other than the execution of pro forma mail-order church-type documents and changes in the designated name of the bank account from which expenses were paid. Even though the wages and income of petitioner were moved through an account which was denominated in the name of a church, payments from the account or from cash on hand were almost exclusively for personal living expenses of petitioners' family, such as: Mortgage-type payments on the residence, insurance, gasoline and maintenance on automobiles and an airplane, clothing, furniture, utilities, food, etc. Even if the benefit inuring to members *358 is small, it would be impermissible under section 170(c)(2)(C). Unitary Mission Church of Long Island v. Commissioner,74 T.C. 507, 513 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981). In this case petitioner employed the additional subterfuge of paying himself a "stipend" which he contends covered his personal expenditures and which he utilized by means of a separate "personal" bank account. In fact, the vast majority of petitioner's family's personal expenses were not paid from petitioner's "personal" bank account. Accordingly, we hold that petitioners are not entitled to any charitable deductions for any amounts purportedly transferred to either of the "churches" organized by petitioners. McGahen v. Commissioner,supra at 483; Davis v. Commissioner,supra at 815-818; Stephenson v. Commissioner,supra at 1002-1003. Mone v. Commissioner,774 F.2d 570 (2d Cir. 1985), affg. a Memorandum Opinion of this Court. Petitioners as Agents of a Religious Order
Petitioners' alternative argument is that any income or wages earned by them was earned *359 as agents of one of their "churches." Here, again, petitioner went through the formality of presenting agreements to various of the entities he worked for and in some instances the entities executed the agency-type agreements. Checks, however, were always issued to petitioner. "[T]axpayers bear a double burden: they must show that a contractual relationship existed between their secular employers and the religious order, and that the religious order controlled or restricted the taxpayers' use of the money purportedly turned over to the order." Mone v. Commissioner,supra at 573; Pollard v. Commissioner,786 F.2d 1063 (11th Cir. 1986); Stephenson v. Commissioner,supra; also see Schuster v. Commissioner,84 T.C. 764 (1985), on appeal (7th Cir., July 23, 1985); Fogarty v. United States,780 F.2d 1005 (Fed. Cir. 1986). Although it is not clear whether the entities for which petitioner performed work actually contracted with a "religious order," it is clear that the "religious order" did not restrict or control petitioners' use of the remuneration, as more fully discussed in the "contributions" *360 portion of this opinion. In this instance it was petitioner who had control over both the "principal" and its assets. We accordingly hold that petitioners, and not their "churches," were the recipients of income during each of the years in question and that they were required to report the income to respondent. Addition to Tax - Sec. 6653(a) (Negligence)
Respondent has determined an addition to tax under section 6653(a)(1) and (a)(2) [5] for all four taxable years under consideration.[6] We sustain respondent's determination and find that petitioners are liable for additions to tax under section 6653(a) due to their negligence and intentional disregard of rules and regulations. Petitioners bear the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). We have repeatedly sustained the section 6653(a) addition in cases involving the use of a "church" to obtain a deduction for personal and family expenses. Although petitioners have created a more complete or elaborate facade in this instance, we believe that people with petitioner's education and intelligence must have known they could not avoid tax or deduct personal or family *361 expenses in the manner herein accomplished. Davis v. Commissioner,supra at 820-821. Petitioners raised First Amendment arguments during trial, but have refrained from briefing them. [7] We have recognized these attempts to hide behind the First Amendment to avoid income tax as an insidious misuse of the underpinnings of our democracy. See Wilcox v. Commissioner,T.C. Memo. 1985-243. We sustain respondent's determination of additions to tax pursuant to section 6653(a)(1) and (2) for the taxable years 1980, 1981 and 1982. *362 Addition to Tax - Sec. 6654 (Failure to Pay Estimated Tax)
Respondent determined additions to tax for 1979 and 1982 for failure to pay estimated tax. Due to our holding regarding 1979, the need to consider the section 6654 addition to tax is obviated for that year. With respect to 1982, it is petitioner's burden to show that respondent's determination is in error, and our findings on other issues and the record as a whole indicate that petitioner has not carried his burden. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure.
Damages Under Sec. 6673
Respondent, by motion, is seeking damages under section 6673 for instituting or maintaining this case for delay or because petitioners' position in this proceeding is frivolous or groundless. Based upon the entire record in these consolidated cases, we decline to award damages under section 6673. To reflect the foregoing, An appropriate order and decision will be entered in each docket.
APPENDIX A
(reproduced literally) CHARTER Basic Bible Church of America
*363 Box 1708, Twin City Airport, MN 55111, 612-854-7714 THIS IS TO CERTIFY THAT this Auxiliary Basic Bible Church of America of Douglas A. Page, D.D. and Carolyn Page. D.D. 15817, Valley View Road, Eden Prairie, Minn. 55344 is ordained and established as a subsidiary or auxiliary Church of, and is granted a Church Charter by, THE BASIC BIBLE CHURCH OF AMERICA, Minneapolis, Minnesota, U.S.A., to further the doctrine and principles of the Basic Bible Church in the free exercise of Religion, upon the express agreement of the Trustees of this Auxiliary Church now ordained and established by this Charter to the following terms and conditions; To-Wit: 1. That this Auxiliary Church shall be governed by three or more Trustees who shall hold all real and personal property in trust, either individually, or as joint tenants for this Auxiliary Chartered Church. No property will become the property of the parent church or any other church unless given by gift or by bequest. 2. This Auxiliary Church shall remain unincorporated and no other churches or orders may be formed by this Auxiliary Church. 3. That this Church is organized primarily for religious, charitable, literary and educational *364 purposes, exclusively. 4. That no part of the earnings of this Church will inure to the benefit of private shareholders or individuals. 5. That this Church, will not, as a substantial part of its activities, attempt to influence legislation, or participate in or against any candidate's political campaign for public office. 6. That this Church is not organized or operated for the benefit of any private interests or other designated interests, or individuals, or persons controlled, directly or indirectly, by such private interests. 7. That this Church may accept and receive contributions. 8. That this Church may employ missionaries. 9. That the Board of Trustees may lease, own and manage the Church and other Church property on behalf of the Church and may conduct other Church business in the same manner as if they were trustees of a common law trust. 10. That the duration of this Church shall be perpetual unless the Charter is revoked for a violation of these conditions. 11. That the office of the Church shall be at such place as the trustees may designate. 12. That the names and addresses of the Trustees shall at all times be filed with the Head Office of *365 the Church addressed to P.O. Box 1708, Twin City Airport, Minnesota, 55111. 13. That this Church is formed and organized for the purposes set out in No. 3 above within the meaning of Section 501 (C) (3) and 501 (A), 26U.S. Code, Internal Revenue Code of 1954. 14. That one of the purposes of this Church is to receive contributions and to pay them over to organizations that are described in Section 502 (C) (3) and exempt from taxation under Section 501 (A) of the Internal Revenue Code of 1954. 15. That the tenets or beliefs of the Basic Bible Church, which are the objects of conscientious regard and pursuit and which are to be carried out conscientiously by expression, association, conduct and ritual, are The Magna Charta, The Declaration of Resolves of the 1st Continental Congress of 1774, The Declaration of Causes and Necessity of Taking up Arms of 1775. The Constitution of the United States, The Declaration of Independence. The Immutable Laws of Nature and Nature's Creator, and such parts and writings in the Sacred Scriptures consistent with the natural individual rights of Man, and the doctrines, principles and teachings set forth therein are to *366 be held sacred. 16. That this Church is organized to promote the principles of separation of Church and State as are set forth in Thomas Jefferson's "Virginia Statute on Religious Freedom" of 1786. 17. Upon the dissolution of the Church, the Board of Trustees shall, after paying and disposing of all legal liabilities of the Church, dispose of all assets of the Church exclusively for the purposes of the Church in such manner and to such organizations(s), organized and operated exclusively for charitable, educations, religious or scientific purposes which shall at the time qualify at an exempt organization under 501 (C) (3), of 26 U.S. Code, as the Board of Trustees shall determine. Any such assets not so disposed of shall be disposed of by the Court of Common Pleas of the county in which the principle office of the Church is then located, exclusively for such purposes to such organization(s) as the said court shall determine which are organized and operated exclusively for such purposes. 18. That this Church Charter does not go into effect until it is agreed to by the Trustees of the Church charactered hereby. 19. That the trustees of the Church chartered hereunder may *367 make such rules and bylaws not inconsistent herewith. NOTE: Virginia Statute of Religious Liberty and letter of April 14, 1974 granting tax exemption by IRS to Basic Bible Church.
20. [Illegible Line] or authority to charter any other church under this church. 21. That this Auxiliary Chartered Church is not under the management, direction or control of the parent church and therefore the parent church is not liable for any debts, obligations, engagements entered into or liabilities of any kind or nature incurred by the auxiliary church. 22. That likewise, the parent church is not under the control or the Auxiliary Church in any of its business dealings and in so doing business of any kind or nature. The Auxiliary Church is not liable for any debts, obligations or engagements entered into or liabilities of any kind or nature incurred by the Parent Church. 23. This Charter is granted upon the further condition that the members of the Basic Bible Church are bound by oath or affirmation that they support the principles of the Basic Bible Church including the principle and sacred belief that each individual owns the right over his own life, that he owns no right over the *368 life of anyone else, and that no one owns any right over his life. Further, The Basic Bible Church abhors and detests the basic Communistic Principle, "That the Citizen exists for the sake of the State", and supports the basic Capitalistic principle that the Citizen exists for the sake of himself, his family and those others whom he chooses by the exercise of his own free will. The Basic Bible Church is founded upon the liberty of religious association, the right to the pursuit of knowledge and the free use thereof by those of the same philosophy. 24. Grant of this Charter is further conditioned that all signs displayed and religious intelligence and material distributed to the general public will indicate clearly that this Auxiliary Church and the Order of Almighty God, a Religious Order created hereunder, "are auxiliary organizations of the "Basic Bible Church of America, Minneapolis, Minnesota." Granted by Order of the Bishops in Council, under the powers authority and constitution of the Basic Bible Church of America, mailing address P.O. Box 1708, Twin City Airport, Minnesota, 55111 This day May 5, 1978 Jerome Daly, D.D., Bishop, Charge D'Affaires ACCEPTANCE OF CHARTER
*369 NOW THEREFORE, The undersigned, Trustees of this Chartered Church, do hereby agree to the conditions set forth in the above granted Charter by the Basic Bible Church of America, and do hereby subscribe to the same and accept our obligations as trustees thereunder and agree to carry forth the objects of this Religious Trusteeship as Common Law Trustees to the best of our abilities without any personal liability on our part for any liabilities or obligations incurred by said Auxiliary Church. Dated 5/20/78 [Illegible Paragraph] NOTE: Copyright, 1976 by Jerome Daly, D.D. - All rights reserved. No part of this material may be copied or reproduced, nor the religious theory set out, in whole or in part, except in connection with the business of this Church by authorized persons. Basic Bible Church of America
BY-LAWS OF THE "ORDER OF ALMIGHTY GOD, CHAPTER NO. 8036 ORDAINED AND ESTABLISHED UNDER THE DIRECTION AND AUTHORITY OF THE BASIC BIBLE CHURCH OF AMERICA, MINNEAPOLIS, MINNESOTA, P.O. BOX 1708 TWIN CITY AIRPORT, MINNESOTA 55111. PREAMBLE These By-Laws are adopted by the "ORDER in consonance with the purposes of the BASIC BIBLE CHURCH OF AMERICA, a religious organization *370 dedicated to the Bible and the U.S. Constitution for the purpose of professing and furthering universal belief in the laws, principles, morals, ethics and works of the Creator and the compelling authority of the Universal Laws more ancient than civilization and desiring to bring all matters into conformance thereto; THEREFORE, I/We declare personal faith in our Creator and the laws of nature and that I/We have confessed our faith thereto. Article I. Designation. This Order is named, THE ORDER OF ALMIGHTY GOD", Chapter No. (as above designated), of the BASIC BIBLE CHURCH OF AMERICA, of Minneapolis, Minnesota. Article II. Principle Office. The principle office of this Order is located at 15817, Valley View Drive Rd., Eden Prairie, Minn. Article III. Officers Officers shall consist of, as Head of this Order Douglas A. Page, D.D. and the persons signing hereto as Trustees. The Head of this Chapter shall be for life unless otherwise agreed to. The Trustees shall have no right to vote in this Order but shall act to hold property in trust and in an advisory capacity only. (Copyright, 1975 by Jerome Daly, D.D. All rights reserved. No part of this may be reproduced *371 except in the legitimate business of this Order) Article IV. Members. The sole authority of this Chapter of this Order shall be vested in the Head of this Chapter. All other members of this Chapter shall be advisory trustees or nominee Heads of the Order, whom the Head of the Order shall listen to for advice, but they shall have no right to vote unless so designated otherwise by the Head of this Order. All members of this Chapter shall be professing and practicing spiritualistic Religion of historic faith in the Basic Bible Church, who have confessed their faith subsequent to their conversion, except that all children of the Head of this Chapter shall be non-voting Trustees. All children of members shall be members without further qualifications until age 25. Membership shall be for life except as otherwise stated or declared by a unanimous vote. Article V. Property. All property, income, etc., of the Order shall remain property of the Order. In case of dissolution, distribution shall be in accordance with Article VI. of these By-Laws and 26 U.S. Code Section 501 (C) (3). Article VI. Legal Tax Exempt Required Statments. This Order is organized and operated *372 for exclusive religious purposes of the Basic Bible Church. No part of the net earnings of this Order shall inure to the benefit of any person or individual except for the purpose of enabling that person to carry out the duties of this Order. No substantial part of the activities of this Order shall consist of carrying on false propaganda or false statements, or otherwise attempting to influence legislation. No part of the activities of this Order shall be to participate in, or intervene in (including the publishing and distributing of statements), any political campaign on behalf of any candidate for public office. Upon the dissolution of this Order, its assets, remaining after payment, or provision for payment of all debts and liabilities of this Order, shall be distributed to a non-profit fund, foundation, or corporation which is organized and operated exclusively for religious purposes and which has established its tax-exempt status under Sec. 501(c) (3) of the Internal Revenue Code. If this Order holds any assets in trust, such assets shall be disposed of in such a manner as may be directed by decree of the Superior Court of the County in which the *373 Order has its principal office upon Petition of any one lawfully concerned in the liquidation thereof, in a proceeding to which all parties in interest are joined. All property is irrevocably dedicated to the spiritual religious purposes of this Order. Article VIII Discipline. The members of this Order shall constitute a religious body; or an aggregate of separate communities under the President of the Basic Bible Church, Jerome Daly, who is leader in highest authority of "THE ORDER OF ALMIGHTY GOD", with full power and authority to appoint and fire a Chief of Staff or any part or particular section of the world. Intra-Order discipline of each Chapter ordained and established shall be vested exclusively in the Head of each particular Chapter. In the event of a dispute over doctrine between the Trustees of each Chapter and the Head of the Chapter, the Head of the Chapter shall have exclusive authority to decide the dispute and discharge the trustees if necessary; except all parties agree that the following basic fundamentals of the Basic Bible Church shall be adhered to: (Note: The following is the outer cover of a document containing 40 pages of the Declaration and Constitution. *374 This, along with basic fundamentals consistent therewith found in the Bible are to be adhered to as fundamental doctrine.) IV. The DECLARATION OF INDEPENDENCE and CONSTITUTION OF THE UNITED STATES OF AMERICA
This Document is distributed by, and contains fundamental beliefs and philosophy of THE BASIC BIBLE CHURCH OF AMERICA
The basic Documes, Principles and Beliefs held as "Truth" of the Basic Bible Church are the Declaring of Independence and the Constituties of the United States, and the sacred Bible. (The 16th and 25th Amendments are not included in the Doctrine of B.B.C.) The Declaration of Independence sets up the reverence of the members of the Basic Bible Church views of their relation to their creator, and the obligation they impose of reverence for the being and character of the Creator and of obedience to the Will of the Creator, regardless of what one's conception of the Creator is. The United States Supreme Court has stated that "Religion" has reference to one's views of his relationship to his creator and to the obligations they impose of reverence for the being and character of the Creator and of the necessity of chedience of the Laws of the Creator. (Continued *375 inside cover.) "Ethics" may be defined as that science which tries to get at right and wrong, good and evil, of men and measures, in matters individual, neighborhood, racial, national and cosmopolitan. It concerns itself with setting up Rules for fair play and with fair play in dealings between man and man, between man and the balance of nature, and in discerning the laws of nature and of Nature's God, or Nature's Creator, and in following them with reverence and devotion. The basis of all "Religion" and "Ethics" are the immutable laws of Nature and of Nature's Creator. "Ethics" is the system or code of morals of a particular person, religion, group, profession or trade organization. In their true meaning the words Religion and Ethics are synonymous. Religion and Ethics pertain to matters of conscience. The Declaration of Independence has reference to one's views of his relation to his Creator. In part it is as follows: "When in the Course of Human Events, it becomes necessary for one people to dissolve the political bands which have connected them with another and to assume among the Powers of the Earth, the separate and equal station to which the laws of nature and of *376 Nature's God entitle them, a decent respect to the opinions of mankind requires that they should declare the causes which impel them to the separation. We hold these truths to be self-evident, that all men are created equal, that they are endowed by their creator with certain unalienable rights; that among these are life, liberty and the pursuit of happiness. That to secure these rights, governments are instituted [Illegible Lines] laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness." The above sets up a reference of one's views of his relation to his Creator and the Creator of the Laws of Nature and of one's views toward his government. The views of his obligations toward his fellow man are revealed by the immutable Laws of Nature. It also sets up the rules of fair play between man and man and the individual and the government ordained and established by the people. The Will of the Creator is expressed in the Laws of the Universe and the Bible. The "Declaration of Independence" talks about the separate and equal station to which the laws of nature and of Nature's God entitle *377 them. Simply stated the Laws of Nature set each individual up in a separate and equal station and he is bound by the laws of nature. If he violates the Laws of Nature, as it has been shown in the the past, be may be subject to a swift and turnable retribution. The Laws of Nature and of Nature's Creator are in part set out in the Declaration of Independence and the Constitution of the United States. These are fundamental Laws and are recognized by the Basic Bible Church. The members of the Basic Bible Church are bound by oath or affirmation to support these Fundamentals as these represent the Will of the Creator and the Laws of Nature in part; a sacred belief is that each individual owns the right to his own life, that he owns no right over the life of any one else, and that no one else owns any right over his life. These beliefs are the object of conscientious regard and pursuit, and are carried out conscientiously by expression, association, conduct and ritual. The ritual consists of peaceable assembly before the various departments of the government, including the Courts and by presenting oral and written petitions for a redress of grievances and by assisting those who *378 do by speaking at their direction and on their behalf. THE BASIC BIBLE CHURCH IS FOUNDED UPON THE LIBERTY OF ASSOCIATION AND THE RIGHT TO PURSUE KNOWLEDGE AND THE FREE USE THEREOF BY THOSE WHO HOLD THE SAME OR SIMILAR RELIGIOUS, MORAL AND POLITICAL PHILOSOPHY. Its foundation is the inalienable right to Free Trade in Ideas and free trade in the commerce of ideas, which means free trade in the opportunity to persuade to action, not merely to describe facts and philosophy. The Basic Bible Church holds that 1st Amendment rights are absolute, and to be considered sacred. The sacred purpose of the Basic Bible Church is to make right and reason the master of might; to promote peace, reason and good will on earth; to safeguard and transmit to posterity the principles of justice, freedom and reason, and to adopt in action, letter and spirit, the great and sacred principles for which the Basic Bible Church stands. Jerome Daly, President, BASIC BIBLE CHURCH
The parties agree that the above stated material will be distributed at every reasonable opportunity in a peaceful manner as a part of the practice, ritual and work of this special "ORDER OF ALMIGHTY GOD" to the end that grievances *379 may forthwith be settled before the departments of government designed for that purpose. In the event of a dispute over doctrine, after full notice of the charges or matter in dispute, and after full opportunity for hearing and study, and after full deliberation and consideration the dispute shall be settled by Jerome Daly, President of the Basic Bible Church in whom sole authority to settle disputes shall vest after full compliance with due process requirements of notice, charges, hearing and decision made according to rules. In the event that any dispute is not settled amicably, pursuant to the agreement, then President Daly has the right to revoke, rescind and set aside the Chapter created hereby, except that such revocation shall not be construed to impair any rights or obligations entered into or had prior to the time of revocation of Order status. In addition to the above Doctrine, the Head of this Order and the Trustees shall agree to adhere to and promote the following Doctrine; rights secured by Magna Charta, the Declaration of Independence, The Common Law and the U.S. Constitution and the various State Constitutions for the security to life, liberty, property and happiness *380 of the Individual and religious freedom and these rights are to be held sacred by the members of this Order. Further, that by the sacred laws of nature, there is no right to enslave. We further affirm, that by the sacred laws of Nature and the Creator, it is better to be honest than dishonest, direct than indirect, upright than underhanded, free than slave, in body and mind. For the protection of morality and honesty among the people, it is a sacred principle that all power exercised over a Nation must have some beginning. It is delegated by the people in a written sacred Constitution to their sworn agents and servants, or it is assumed. All delegated power is a trust. All assumed power is sinful, despotic usurpation. That in all ages and in all countries, the common street criminal is a small minority. That the harm they have caused mankind is infinistesimal when compared to the wars, conquests, famine, deaths, horrors, persecutions, confiscations and wholesale destructions perpetrated by false governments and usurping public servants. That public servants holding the power of force in any country in any age are the most dangerous threat to man's life. These public servants, *381 who after having taken a solemn, sworn oath to support the constitution, and then, with uninhibited abandon, ride down the natural rights of the Individual, constitute the Citizen's deadliest enemy. It is therefore agreed and directed that the purpose of this Order is to be especially watchful of individual Creator given natural rights; and each member shall for all time be especially watchful to see that these rights are secured, protected and upheld. That in addition to the principles set forth and moral codes set out, as natural rights endowed by the Creator, the members of this Order may espouse moral theories and statements from the good books, bibles, and cannons of any other religious or ethical group, not inconsistent herewith and cause such to be published and distributed. That at all times it is required that, in the protection of the morals of society as a whole, the membership of this Order shall support a "Free-enterprise, capitalistic society as opposed to all "Statist Societies" based upon communism, collectivism, monarchy, fascism or other dictatorship of any kind or nature. It is a sacred principle that complete sovereignty resides in the Individual. Further, *382 that a government of laws is the best and that public servants can only act as deputies in carrying out the sovereign authority of the people. That at each meeting held by the members of this Order religious services shall include the reading, with reverence of all or part of the Declaration of Independence, The U.S. Constitution, and the State Constitution where situated and more especially the Preamble and the Bill of Rights of the State Constitution. The Sacradotal functions performed by this Order shall consist of the dispensation and receiving of natural vitamins, including Laetrille or vitamin B-17 in such manner as complies with reason for the purpose of aid, comfort and healing the sick and injured. In each instance appropriate ceremony, rites and formalities shall be entered into. The Ministers of this Order shall have the power to administer the sacraments and shall cause their Ministers Certificates to be filed with the proper governmental officials or office to enable them to perform the Sacraments of Marriage and Burial. The Head of this Order shall take a vow of poverty. The Head of this Chapter shall have the sole power to control and dispense with the funds *383 and property of this Chapter of this Order for his support, and the support of the members of this Order to carry out the purposes of this Order pursuant to these by-laws and 26 U.S. Code Sec. 501(c)(3). That the head of this Chapter and Order shall at all times, day and night, on and off the job or at work, engage in distributing material of the Basic Bible Church and of this Order. The Head of this Order shall keep a record of all services, meetings held and evangelical work performed and the distribution of materials by the Head of this Order and the designated Trustees and other Church and Order workers for inspection by Jerome Daly Chief of the Order and President of the BAsic Bible Church or to the person so designated by Jerome Daly. That all information and communications by and between all members of this Order shall be had and kept in strict confidence and is to be considered privileged, and all agree to keep it secret. Necessary disbursements paid by the Head of this Order to himself and his trustees shall be determined by the Head of this Order and neither Jerome Daly nor his delegated has any right to dictate the management, control or disbursements of any money *384 or real or personal property. VIII. Title to Property. All property, real, personal and otherwise of this Church and Order shall be held by one or more of the trustees of this Order in the same manner as if this were a Common Law Trust all according to 26 U.S. Code Sec. 501 (c)(3). The said Property shall be used and disposed of for religious purposes of this or similar Churches or Orders consistent with the guidelines set forth in Article VI of these By-Laws. IX. Purposes of Order's Property This Order is not organized or operated for the benefit of any private interests, or other designated interests or individuals, or persons controlled, directly or indirectly by such private interests. x. Power to Create Other Orders Neither the Head of this Order nor any of the Trustees have any Power to create any other Order under this Order, or the authority thereof. xi. Responsibility for Liabilities That Jerome Daly, as Chief of the Order, nor The Basic Bible Church nor either of them, are responsible for any of the debts, obligations, liabilities or engagements entered into by the Head of this Order or any of its members, and the opposite is true, no member of *385 this Chapter are responsible for any of the obligations of the parent organization nor Jerome Daly and each set of parties agree to hold the other harmless. Granted by the authority of the Bishops in Council of The Basic Bible Church of America, Minneapolis, Minnesota and Jerome Daly, D.D. Head and Chief of THE ORDER OF ALMIGHTY GOD, with full power and authority granted to him by solemn act of the Basic Bible Church of America to establish Religious Orders and Chapters under the Order of Almighty God and to give directions and make requirements for the religious duties undertaken by the members of the Order, including the dispensation of Sacraments by Ministers Ordained by the Church and Order under the authority of the Bishops in Council, and Church Seal this May 5, 1978. BASIC BIBLE CHURCH OF AMERICA, MINNEAPOLIS, MINNESOTA
BY JEROME DALY, D.D., BISHOP IN CHARGE D'AFFAIRES, BASIC BIBLE CHURCH OF AMERICAMINNEAPOLIS, MINNESOTA, AND CHIEF OF THE ORDER OF ALMIGHTY GOD CONSENT AGREEMENT TO ACT I, the undersigned, as Head of the ORDER OF ALIMIGHTY GOD, Chapter No. above designated, created by this solemn instrument, do hereby accept the appointment, do hereby accept the appointment *386 as Head of this Chapter of the religious ORDER OF ALMIGHTY GOD created by these presents and I do further agree to the terms of these By-Laws, and in addition thereto I agree to take a vow of poverty as is required of all members of this Order. Dated 5/5/78 Douglas A. Page, HEAD OF THIS CHAPTER OF THE ORDER OF ALMIGHTY GOD, A RELIGIOUS ORDER TRUSTEES AGREEMENT TO ACT We, the undersigned Trustees agree to act as Trustees of this Order and of any and all property of this Order assigned and transferred to us as trustees and we agree to act and hold said property pursuant to the directions of the Head of this Chapter of the Order of Almighty God, a religious Order. Dated 6/1/75 [Illegible Paragraph] NOTE: APPLICATION PENDING FOR A COPYRIGHT OF THIS MATERIAL Basic Bible Church of America
Box 170S, Twin City Airport, MN 55111, 612-854-7714 KNOW ALL PERSONS BY THESE PRESENTS: THIS IS TO CERTIFY THAT Carolyn Page, D.D. is a Minister of the Basic Bible Church of America, Minneapolis, Minnesota and a member of the Sacradotal Order ordained and established under this Church entitled "THE ORDER OF ALMIGHTY GOD" a religious Order, with full power and authority to enter *387 into external Rite and Ceremony and to administer the Sacraments of this Church in the name of and under the authority of God. This authority extends to, but is not limited to: 1. Performing the Sacrament of Marriage. 2. Performing the Sacraments of Baptism, Confirmation, the dispensation and consecration of the prescribed wines, spirits and vitamins of the Church and performing the last Rites over the dying. 3. The conducting of Funeral and Burial services. 4. The consecration and blessing of Churches, Houses, Bells, and the Holy Communion of this Church as specified in the list of Vitamins, Wines and Spirits. 5. The power and authority to administer the Sacraments of the Dead, Baptims and Penance, for the purpose of conferring supernatural life on the soul. 6. The Power and Authority to administer the sacraments of the living to increase the grace in the soul to do good and avoid evil, and to carry forth an extension of the sacramental principle of using material objects to signify spiritual truths and processes, and employing the unity of matter and spirit. 7. The Power and Authority of using employment and all means of work as a vehicle and sacrament to carry *388 out the principles of this Church and Order and to confer good feeling grace and good works on the Soul and on the Soul's of every one else in association with said employment and work. 8. The Sacramental Power and Authority to Bless the Good intelligent and beautiful Animals of the Bible, Nature and Nature's God, and the power to bless and consecrate vitamins and minerals as sacraments for animals and to administer the sacraments to such good, intelligent and beautiful animals to the end that these sacramental duties are used to enhance the spirit and Souls of these animals and that they be treated and handled in a reasonable and humane manner. 9. The Sacramental Power and Authority to administer, consecrate, distribute and carry out all of the sacramental functions of the Basic Bible Church of America as is outlined and set forth in the Proclamation of the sacraments and functions of The Basic Bible Church of America set forth in said Document dated May 2, 1978 annexed hereto and made a part hereof. This includes the distribution of the booklet containing the Declaration of Independence and the Constitution of the United States and gold and silver Coins, which are therein *389 consecrated as the sacraments of this Church by the Proclamation of May 2, 1978. The authority conferred hereby is to be carried out through due diligence and effort in compliance with the requirements of this Church and the Order of Almighty God and such directions as may be given from the Chief of this Religious Order of Almighty God from time to time. WITH ALL THE POWERS, RIGHTS, PRIVILEGES, IMMUNITIES AND HONORS, GIVEN AT MINNEAPOLIS, MINNESOTA THIS May 5, 1979 BY AUTHORITY OF ORDER OF THE BISHOPS IN COUNCIL Jerome Daly, D.D., Pres. PRESIDING ARCHBISHOP (Copyright, 1977 by Jerome Daly, Pres, Basic Bible Church) (No part of this may be reproduced except in the legitimate Business of this Church, The Basic Bible Church of America) Basic Bible Church of America
Box 170S, Twin City Airport, MN 55111, 612-854-7714 KNOW ALL PERSONS BY THESE PRESENTS: THIS IS TO CERTIFY THAT Douglas A. Page, D.D. is a Minister of the Basic Bible Church of America, Minneapolis, Minnesota and a member of the Secradotal Order ordained and established under this Church entitled "THE ORDER OF ALMIGHTY GOD" a religious Order, with full power and authority to enter into external Rite *390 and Ceremony and to administer the Sacraments of this Church in the name of and under the authority of God. This authority extends to, but is not limited to; 1. Performing the Sacrament of Marriage. 2. Performing the Sacraments of Baptism, Confirmation, the dispensation and consecration of the prescribed wines, spirits and vitamins of the Church and performing the last Rites over the dying. 3. The conducting of Funeral and Burial services, 4. The consecration and blessing of Churches, Houses, Bells, and the Holy Communion of this Church as specified in the list of Vitamins, Wines and Spirits. 5. The power and authority to administer the Sacraments of the Dead, Baptism and Penance, for the purpose of conferring supernatural life on the soul. 6. The Power and Authority to administer the sacraments of the living to increase the grace in the soul to do good and avoid evil, and to carry forth an extension of the sacramental principle of using material objects to signify spiritual truths and processes, and employing the unity of matter and spirit. 7. The Power and Authority of using employment and all means of work as a vehicle and sacrament to carry out the principles *391 of this Church and Order and to confer good feeling grace and good works on the Soul and on the Soul's of every on else in association with said employment and work. 8. The Sacramental Power and Authority to Bless the Good intelligent and beautiful Animals of the Bible, Nature and Nature's God, and the power to bless and consecrate vitamins and minerals as sacraments for animals and to administer the sacraments to such good, intelligent and beautiful animals to the end that these sacramental duties are used to enhance the spirit and Souls of these animals and that they be treated and handled in a reasonable and humane manner. 9. The Sacramental Power and Authority to administer, consecrate, distribute and carry out all of the sacramental functions of the Basic Bible Church of America as is outlined and set forth in the Proclamation of the sacraments and functions of The Basic Bible Church of America set forth in said Document dated May 2, 1978 annexed hereto and made a part hereof. This includes the distribution of the booklet containing the Declaration of Independence and the Constitution of the United States and gold and silver Coins, which are therein consecrated as the *392 sacraments of this Church by the Proclamation of May 2, 1978. The authority conferred hereby is to be carried out through due diligence and effort in compliance with the requirements of this Church and the Order of Almighty God and such directions as may be given from the Chief of this Religious Order of Almighty God from time to time. WITH ALL THE POWERS, RIGHTS, PRIVILEGES, IMMUNITIES AND HONORS, GIVEN AT MINNEAPOLIS, MINNESOTA THIS May 5, 1978 BY AUTHORITY OF ORDER OF THE BISHOPS IN COUNCIL Jerome Daly, D.D., Pres. PRESIDING ARCHBISHOP (Copyright, 1977 by Jerome Daly, Pres, Basic Bible Church) (No part of this may be reproduced except in the legitimate Business of this Church, The Basic Bible Church of America) Basic Bible Church of America
May 5, 1978 Box 170S, Twin City Airport, MN 55111, 612-854-7714 Carolyn Page, D.D., Minister, Basic Bible Church of America, 15817 Valley View Road, Eden Prairie, Minn. 55344 Dear Rev. Page; As a Minister in the Basic Bible Church, and all auxiliary Churches created thereunder, and as a member of the religious Order of Almighty God, you are directed, required and Ordered to carry out the following religious duties: *393 1. You are directed and authorized to conduct regular religious services and to make use the attached prayer during the services. You are authorized and directed to perform the sacramental duties of Marriage, Burial, dispensing of communion in the form of the prescribed vitamins and wine, and the consecration thereof and all other sacradotal functions outlined in the sacred Bible. You are also directed to keep records of the services performed and you are to make an outline report every 6 months to the undersigned. 2. You are also directed and required to secure and distribute the document containing the Fundamental Beliefs of the Basic Bible Church, a copy of which is herewith presented. This contains the fundamental philosophy of the Basic Bible Church and the Order of Almighty God. You are also directed to set aside certain hours of the day to mediate on the evils of the world and ways of correcting these evils. 3. You are directed to secure a Holy Bible and re-print and distribute such passages therefrom that you deem consistent with the fundamental philosophy of the Basic Bible Church as a part of the duties of this religious Order. 4. This Church and Order are *394 founded on the beliefs and teachings contained in the Holy Bible and other sacred scriptures, The Declaration of Independence, the Constitution of the United States and upon the principle that man owns his own life and is bound to practice by word and deed the sacred natural Golden Rule Law, "WHAT YOU DO NOT WISH OTHERS TO DO UNTO YOU, DO NOT DO UNTO OTHERS." You are directed and required, as a part of the duties of this religious Order of Almighty God, to become gainfully employed in constructive employment and to use the renumeration gained therefrom, and to use your occupation as a at all times as an Agent, Minister and Missionary of this Church and Order and not in your individual capacity and you are to use your job and work, regardless of the nature and extent of it, as a vehicle and instrument to carry out and out into effect the principles and teachings of this Church and Order of Almighty God by practicing the Golden Rule and by setting a good example. You are to carry out these duties on a 24 hour basis in order to persuade and encourage other people to practice and apply this Church's Creed, philosophy and teachings to their social, private and business activities and *395 also to the mental and spiritual sector of their lives. You are to constantly set a good example by the practice of these principles and creed yourself. 5. You are directed and required to become employed in gainful, productive and honest work in order to earn income and you are directed to turn this income over to the Church and its Order for the furtherance of the religious principles of this Church and to use your job as a vehicle to carry out the purposes of this Church. 6. You are directed and required to deposit the income of the Church and Order to the account of the Church and Order to he kept by the head of your particular chapter and use it as you see fit and reasonable to carry out the purposes of the Order. 7. You are at all times, on and off the job and work, to carry out the duties of an evangelist on a 24 hour basis during which time you are directed to promote the principles and creed of this Church and Order. 8. On all trips that you take you are to have in your possession and you are required to have available for distribution the document containing the fundamental beliefs and philosophy of The Basic Bible Church of America and you are to have this available *396 on your job or employment for distribution if permissible. Other wise distribute it to your fellow workers after work. 9. You are directed to keep all information regarding Church affairs coming into your possession or knowledge in strict confidence. 10. You are directed to convert any excess paper money or securities into gold and silver Coin, the only real, honest moral money, and you are directed to hold it for the account of the Church and Order to preserve the assets of the Church. 11. You are directed to obtain a packet of Vitamin Sacraments, (to be determined by you, as an example Vitamin "C") and carry these with you to be dispensed at all times and more particularly on the job, so that where ever you are, there this Church is conducting sacramental functions. You are to consult and counsel with the undersigned on any doubtful questions that may arise. In the work of Almighty God.I remain, Secretary Jerome Daly, D.D., Arch Bishop, Pres., Basic Bible Church of America, Chief of the Order of Almighty God
Copyright, 1977 by Jerome Daly Pres. Basic Bible Church of America
May 5, 1978 Box 170S, Twin City Airport, MN 55111, 612-854-7714 Rev. Douglas *397 A. Page, D.D., Minister, Basic Bible Church of America, 15817 Valley View Rd., Eden Prairie, Minn.
Dear Rev. Page As a Minister in the Basic Bible Church, and all auxiliary Churches created thereunder, and as a member of the religious Order of Almighty God, you are directed, required and Ordered to carry out the following religious duties: 1. You are directed and authorized to conduct regular religious services and to make use the attached prayer during the services. You are authorized and directed to perform the sacramental duties of Marriage, Burial, dispensing of communion in the form of the prescribed vitamins and wine, and the consecration thereof and all other sacradotal functions outlined in the sacred Bible. You are also directed to keep records of the services performed and you are to make an outline report every 6 months to the undersigned. 2. You are also directed and required to secure and distribute the document containing the Fundamental Beliefs of the Basic Bible Church, a copy of which is herewith presented. This contains the fundamental philosophy of the Basic Bible Church and the Order of Almighty God.You are also directed to set aside certain hours *398 of the day to meditate on the evils of the world and ways of correcting these evils. 3. You are directed to secure a Holy Bible and re-print and distribute such passages therefrom that you deem consistent with the fundamental philosophy of the Basic Bible Church as a part of the duties of this religious Order. 4. This Church and Order are founded on the beliefs and teachings contained in the Holy Bible and other sacred scriptures, The Declaration of Independence, the Constitution of the United States and upon the principle that man owns his own life and is bound to practice by word and deed the sacred natural Golden Rule Law, "WHAT YOU DO NOT WISH OTHERS TO DO UNTO YOU, DO NOT DO UNTO OTHERS." You are directed and required, as a part of the duties of this religious Order of Almighty God, to become gainfully employed in constructive employment and to use the renumeration gained therefrom, and to use your occupation as a Mechanical Engineer an Businessman at all times as an Agent, Minister and Missionery of this Church and Order and not in your individual capacity and you are to use your job and work, regardless of the nature and extent of it, as a vehicle and instrument *399 to carry out and put into effect the principles and teachings of this Church and Order of Almighty God by practicing the Golden Rule and by setting a good example. You are to carry out these duties on a 24 hour Basis in order to persuade and encourage other people to practice and apply this Church's Creed, philosophy and teachings to their social, private and business activities and also to the mental and spiritual sector of their lives. You are to constantly set a good example by the practice of these principles and creed yourself. 5. You are directed and required to become employed in gainful, productive and honest work in order to earn income and you are directed to turn this income over to the Church and its Order for the furtherance of the religious principles of this Church and to use your job as a vehicle to carry out the purposes of this Church. 6. You are directed and required to deposit the income of the Church and Order to the account of the Church and Order to be kept by the head of your particular chapter and use it as you see fit and reasonable to carry out the purposes of the Order. 7. You are at all times, on and off the job and work, to carry out the duties *400 of an evangelist on a 24 hour basis during which time you are directed to promote the principles and creed of this Church and Order. 8. On all trips that you take you are to have in your possession and you are required to have available for distribution the document containing the fundamental beliefs and philosophy of the Basic Bible Church of American and you are to have this available on your job or employment for distribution if permissible. Other wise distribute it to your fellow workers after work. 9. You are directed to keep all information regarding Church affairs coming into your possession or knowledge in strict confidence. 10. You are directed to convert any excess paper money or securities into gold and silver Coin, the only real, honest moral money, and you are directed to hold it for the account of the Church and Order to preserve the assets of the Church. 11. You are directed to obtain a packet of Vitamin Sacraments, (to be determined by you, as an example Vitamin "C") and carry these with you to be dispensed at all times and more particularly on the job, so that where ever you are, there this Church is conducting sacramental functions. You are to consult *401 and counsel with the undersigned on any doubtful questions that may arise. In the work of Almighty God, I remain, Jerome Daly, D.D., Arch Bishop, Pres., Basic Bible Church of America, Chief of the Order of Almighty God
Copyright, 1977 by Jerome Daly, Pres. (Note: The duties you are instructed to perform herein are of the type that are ordinarily the duties of members of this Order and must be performed by you as part of the duties for or on behalf of this Order Basic Bible Church of America
THE ORDER OF ALMIGHTY GOD, A RELIGIOUS ORDER, CHAPTER NO 8035 VOW OF POVERTY STATE OF MINNESOTA
COUNTY OF HENNEPIN
SS
Douglas A. Page, D.D., HAVING BEEN FIRST DULY SWORN UPON OATH, depose, state and affirm that this is a Declaration of the gift to the Church, and/or, Order herein named, of all possessions of every description now owned or hereafter acquired by me, to be administered by the Church or Order in its capacity of Church Organization and government and Sacred Biblical Powers and those other powers legally recognized for religious organizations. Therefore, I the undersigned, do hereby make an irrevocable gift of all my possessions, real, personal property, chooses *402 in action and otherwise, and all of my income whatsoever, regardless of the form of the income, to the Church, and/or, Religious Order herein named, thus divesting myself of all my possessions and income whatsoever to be used for religious purposes to support the basic Biblical Law of the Church or Order hereinafter named. All such possessions and Income if any, hereinafter being the property of the said Church or Order regardless of whether or not they continue to appear in my personal name. I further understand that I am to use my employment as a Minister and Agent of the Church and Order under the direction and head of the Order and am required to perform duties and services of a religious nature on the job and in my every day business that is of the type that are ordinarily the duties of members of this Order and must be performed by me as part of the duties for or on behalf of this Order as its Agent. I further understand that employment renumeration earned when working among the general public is not my personal income, but rather is income by gift, received as agent of the Church and Order, from the beginning to the Church or Order and not of the individual or the undersigned.
*403 The Church, Order and Chapter No. of said Order is stated above. THEREFORE, I, THE UNDERSIGNED, HEREBY TAKE A VOW OF POVERTY. This vow and religious act is taken pursuant to natural rights as are set out in the Declaration of Independence, The Peace Treaty with Great Britian of 1783, Thomas Jefferson's Statute of Religious Freedom of 1786, the Constitution of the United States and the Sacred Bible Subseribed and sworn to before me this May 5, 1979 Jerome Daly, D.D., Pres.
Notary Public Douglas A. Page
Signator Carolyn Page
(Spouse if in Community Property State) This VOW OF POVERTY is directed to be taken by the above signator (s) at the direction of the undersigned on behalf of the Basic Bible Church of America, a Religious Order. BY ORDER OF THE BISHOPS IN COUNCIL JEROME DALY, D.D., PRESIDENT AND ARCH BISHOP OF THE BASIC BIBLE CHURCH OF AMERICA AND CHIEF OF THE ORDER OF ALMIGHTY GOD, A RELIGIOUS ORDER (No part of the above Vow of Poverty may be reproduced except in the legitimate business of this Church or the authority of Jerome Daly, Copyright, 1977 by Jerome Daly) Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the statutory notice dated Oct. 22, 1984, respondent determined an addition to tax for failure to file (sec. 6651(a)) for the taxable year 1982, but respondent conceded in the parties' stipulation of facts that petitioner's 1982 return was timely filed.↩
3. On Feb. 3, 1986, this Court entered a default decision against the Basic Bible Church for failure properly to pursue its declaratory judgment action, originally instituted to contest respondent's proposed retroactive revocation of its tax-exempt status. See Basic Bible Church of America v. Commissioner,86 T.C. 110↩ (1986).
4. In an alternative argument, petitioners requested that, if taxable, the 1979 income should be taxed at joint rates. Respondent disagreed, arguing that petitioners had failed to elect by failing to file. Because of our holding on the taxable year 1979, it is no longer necessary to consider petitioner's position regarding joint rates.↩
5. Includes negligence or intentional disregard of the rules and regulations and a 50-percent interest addition on the amount of interest attributable to negligence. ↩
6. Because we have concluded that the statute of limitations on assessment has run for 1979, we need not consider the addition to tax for that year. ↩
7. Judge Kaufman has aptly stated that "[e]very year, with renewed vigor, many citizens seek sanctuary in the free exercise clause of the first amendment. They desire salvation not from sin or from temptation, however, but from the most earthly of mortal duties--income taxes." Mone v. Commissioner,774 F.2d 570, 571↩ (2d Cir. 1985), affg. a Memorandum Opinion of this Court.